## COMMONWEALTH vs. WILLIAM KERR.

Middlesex. November 7, 1990. - December 20, 1990.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Self-incrimination, Public employment, Retroactivity of judicial holding. *Witness*, Immunity. *Public Employment*, Police, Termination. *Practice, Criminal*, Retroactivity of judicial holding.

Dismissal of a criminal indictment was not warranted in circumstances in which the defendant, a police officer, was afforded only use immunity and not transactional immunity when he made statements during a police department investigation of the incident underlying the indictment, conducted ten months before this court's holding in *Carney* v. *Springfield*, 403 Mass. 604 (1988), where the defendant's statements were not used at his trial. [14-15]

INDICTMENT found and returned in the Superior Court Department on June 24, 1988.

The case was heard by *Elizabeth A. Dolan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frank J. McGee* for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney (*Richard D. Grundy*, Assistant District Attorney, with her) for the Commonwealth.

NOLAN, J. The defendant, William Kerr, was convicted of interference with the quiet enjoyment of a tenant in violation of G. L. c. 186, § 14 (1988 ed.). He argues that this conviction should be overturned because he answered questions in an internal police department investigation, under threat of departmental discipline after being given use immunity only. He contends that under art. 12 of the Massachusetts Declaration of Rights he was entitled to a grant of full transactional immunity before being compelled to testify. He further

argues that, because he should have been granted such transactional immunity, his motion to dismiss the indictment was improperly denied. We disagree, and accordingly affirm the judgment of the Superior Court.

The facts from which the defendant's conviction arises are as follows. During the evening of February 13, 1988, the defendant visited tenants who occupied part of a two-family dwelling which he owned in Malden. The defendant was on duty and arrived in full uniform and demanded that Magalie Bourguignon, her seven month old son, and two other adult female tenants, leave the apartment. The rent was in arrears. He threatened to remove the occupants if they were not out by the next day.

Later that same evening, at approximately 11 P.M., the defendant returned to the apartment, told Bourguignon that he had not rented to her, that she was a squatter, and that he wanted her out. He stated that he was going to shut off the heat and the lights. He left the apartment and walked through a door which led to the stairs to the basement. A few minutes later, the lights in the apartment went off. The master electrical fuse for the apartment had been removed from the fuse box. This removal also deactivated the heat for the apartment.

Shortly thereafter, Bourguignon telephoned the Malden police department. The defendant was one of the three officers who responded. He denied knowledge of the absence of electricity in the apartment. Bourguignon showed the officers that there was a fuse missing from the fuse box.

At approximately 2 A.M. on February 14, the two officers who had been with the defendant earlier came back to check on the occupants. They found the women and the infant huddled in front of an open oven trying to stay warm. The officers transported them to a shelter for the rest of the night. The next day, the defendant telephoned Bourguignon to say that he was coming over to put the lights back on. Within a few days, the defendant called the tenant and begged her not to tell the truth about what had happened because he feared the loss of his job.

The Malden police department conducted an internal investigation of the incident. On February 19, 1988, the defendant was questioned by a captain at the Malden police department. He was given a form which provided that: (1) any self-incriminating answers given and any fruits of those statements could not be used against him in a criminal proceeding; and (2) he was required to answer the captain's questions or be subject to disciplinary penalties. The defendant answered questions after reading the form.[1] The defendant was later convicted of interference with the quiet enjoyment of a tenant in violation of G. L. c. 186, § 14.[2] None of

---

[1]In the internal investigation, the defendant denied threatening the tenants, removing the circuit breaker, or harassing the tenants in any way.

[2]General Laws c. 186, § 14 (1988 ed.), provides: "Any lessor or landlord of any building or part thereof occupied for dwelling purposes, other than a room or rooms in a hotel, but including a mobile home or land therefor, who is required by law or by the express or implied terms of any contract or lease or tenancy at will to furnish water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service to any occupant of such building or part thereof, who willfully or intentionally fails to furnish such water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service at any time when the same is necessary to the proper or customary use of such building or part thereof, or any lessor or landlord who directly or indirectly interferes with the furnishing by another of such utilities or services, or who transfers the responsibility for payment for any utility services to the occupant without his knowledge or consent, or any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant, or who attempts to regain possession of such premises by force without benefit of judicial process, shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment for not more than six months. Any person who commits any act in violation of this section shall also be liable for actual and consequential damages or three month's [*sic*] rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee, all of which may be applied in setoff to or in recoupment against any claim for rent owed or owing. The superior and district courts shall have jurisdiction in equity to restrain violations of this section. The provisions of section eighteen of chapter one hundred and eighty-six and section two A of chapter two hundred and thirty-nine shall apply to any act taken as a reprisal against any person for reporting or proceeding against violations of this section. Any waiver of this provision in any lease or other rental agreement, except with respect to any restriction on the provision of a service specified in this section imposed by the United States

the defendant's statements made at the internal investigation was used against him.

Under the Fifth Amendment to the United States Constitution, the government may compel a person who has been offered use or derivative use immunity to testify. *Kastigar* v. *United States*, 406 U.S. 441 (1972).[3] Kerr's rights under the Fifth Amendment, therefore, were not violated when he was compelled to testify after being given use immunity. However, this court has held that, in some circumstances, art. 12 affords a broader protection than the Fifth Amendment. See *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795-796 (1982).[4]

In 1988, in *Carney* v. *Springfield*, 403 Mass. 604 (1988), and two related cases,[5] we underscored art. 12's broad protection by deciding that public employees could not be discharged for refusing to answer questions in an internal investigation absent a grant of transactional immunity. In *Carney*, we held that, even after being granted use and derivative use immunity, a police officer still possessed a right to remain silent under art. 12 and that he could not be discharged for exercising that right. *Carney* was decided some ten months after the police investigation at issue here.

The defendant argues that, because he was entitled to transactional, as well as use, immunity with respect to the subject of his interrogation, his motion to dismiss the indict-

---

or any agency thereof, or the commonwealth or any agency or political subdivision thereof and not resulting from the acts or omissions of the landlord or lessor, and except for interruptions of any specified service during the time required to perform necessary repairs to apparatus necessary for the delivery of said service or interruptions resulting from natural causes beyond the control of the lessor or landlord, shall be void and unenforceable."

[3]The Fifth Amendment to the United States Constitution states in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself."

[4]Article 12 states in part: "No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself."

[5]*Doe* v. *Springfield*, 403 Mass. 1010 (1988), and *Springfield* v. *Civil Serv. Comm'n*, 403 Mass. 612 (1988).

ment should have been allowed. We shall assume with the defendant that his constitutional right under art. 12 to protection against self-incrimination was violated because he was compelled to answer questions without being granted transactional immunity. The question is whether, assuming such a violation, the defendant's conviction must be reversed. A justification for the exclusionary rule because of violations of constitutional rights is the deterrence of future unlawful conduct by government employees, in violation of established constitutional principles. A justification for the even harsher consequence of dismissal of criminal charges would also be to discourage future violations of established constitutional rights.

In the case before us, the police officer who conducted the questioning of the defendant extended use immunity to him but, not having the benefit of our *Carney* opinion, which was issued ten months later, the officer did not discuss transactional immunity with the defendant. The dismissal of charges against the defendant would be too high a price for society to pay for such an unknowing police error. It is sufficient that the defendant's statements were not used at his trial. The inadvertent police conduct, not then in violation of established constitutional principles (which would violate them if carried on today), does not require dismissal of this indictment.

*Judgment affirmed.*