PETER BAGLIONI & others[1] vs. CHIEF OF POLICE OF SALEM
& another.[2]

Essex. September 12, 1995. - November 6, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*District Attorney. Witness*, Immunity, Police officer, Polygraphic test. *Constitutional Law*, Self-incrimination.

Discussion of the scope of a district attorney's authority to grant immunity. [231-233]

A district attorney's grant of immunity to two persons with respect to events as to which they were obliged to make statements at the risk of loss of employment did not fully protect those persons' privileges against self-incrimination under the Constitutions of the Commonwealth and the United States, where the purported immunity was not effective Statewide and did not protect against use of any statements in the prosecution of any Federal crime. [233-235]

CIVIL ACTION commenced in the Superior Court Department on February 3, 1993.

The case was heard by *Richard E. Welch III*, J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert O. Berger* (*Robert L. Wise* with him) for the plaintiffs.

*Daniel B. Kulak* for the defendants.

WILKINS, J. In connection with a criminal investigation by the Salem police department concerning malicious damage to another officer's locker and the filing of a false report, the

---

[1] Baglioni, as president, and William Jennings, Jr., as vice president of the Salem Police Patrolmen's Association, Ruben Felix, and Peter Shaffaval. We shall refer to Felix and Shaffaval as the plaintiff officers.

[2] City of Salem.

plaintiffs Felix and Shaffaval, Salem police officers, were each ordered to undergo a polygraph examination. Their captain advised them that "[a]ny statements you make cannot be used against you in any criminal proceeding. Answers provided by you are admissible in a departmental hearing." The chief of police also advised them that "failure to submit to the polygraph examination may result in disciplinary action up to and including dismissal."

Counsel for the Salem Police Patrolmen's Association wrote to the chief of police complaining that the order violated the officers' rights under art. 12 of the Massachusetts Declaration of Rights because the officers had not been granted transactional immunity. Almost immediately the district attorney for the Eastern District wrote to the chief of police that he had reviewed a report concerning the defacing of a locker and had decided not "to seek any criminal complaints against any of the police officers involved in this incident." He also agreed "not to prosecute any officer for offenses to which his or her subsequent compelled testimony relates." The district attorney's letter did not purport to grant immunity against prosecution by any other prosecutor.

The plaintiffs promptly commenced this action seeking declaratory relief and an injunction barring the defendants from compelling either plaintiff officer to undergo a polygraph test unless he were first granted transactional immunity. The defendants concede that before either plaintiff officer may be compelled to make any statement he must be granted State transactional immunity as to any such statements. See *Carney* v. *Springfield*, 403 Mass. 604, 610 (1988). The defendants argue that the district attorney's promise meets that requirement. A judge of the Superior Court agreed, ruling that the district attorney's letter was sufficient to grant transactional immunity. He entered judgment dismissing the action. Although we agree with the judge that the district attorney's letter purported to grant transactional immunity, the district attorney's letter did not grant immunity sufficient to protect the plaintiff officers'

privilege against self-incrimination under the State and Federal Constitutions.

We deal with the question of the inherent authority of a district attorney to grant immunity. The only statute that concerns grants of immunity authorizes a single justice of this court, on request of a prosecutor, to permit a grant of State transactional immunity to a person who has asserted the privilege against self-incrimination when called to testify before a grand jury. G. L. c. 233, §§ 20C-20H (1994 ed.). Although we have said that a prosecutor on his own may not properly grant immunity to a grand jury witness, because the immunity statute covers the entire subject of immunity for such witnesses (*Grand Jurors for Middlesex County for the Year 1974* v. *Wallace*, 369 Mass. 876 [1976]), we have not defined the scope of a district attorney's authority to grant immunity in other contexts.[3]

We are not concerned here with the consequences of a witness's reasonable reliance on a promise of immunity given by a prosecutor who lacked authority to grant immunity. See *Matter of DeSaulnier (No. 2)*, 360 Mass. 761, 764 (1971) (stipulation of immunity relied on by witness must be enforced in good faith and fairly). *Santobello* v. *New York*, 404 U.S. 257, 262 (1971) (prosecutor's agreement to make no sentencing recommendation must be adhered to); *Garrity* v. *New Jersey*, 385 U.S. 493, 500 (1967) (use immunity required for answers to questions given under threat of job loss). Cf. *Commonwealth* v. *Benton*, 356 Mass. 447, 448-449 (1969) (prosecutor's promise to nol pros certain charges enforced because sovereign must adhere to highest degree of ethics). The plaintiffs have rejected the district attorney's purported grant of immunity on the ground that the district attorney lacked authority to grant them immunity sufficiently broad to protect them from self-incrimination. The chief of police does not argue that the plaintiff officers must

---

[3]Similarly we have noted and have left open the question whether a trial judge may properly grant immunity to a witness. See *Commonwealth* v. *Doherty*, 394 Mass. 341, 343-344 n.3 (1985), and cases cited.

comply with his demand that they take polygraph examinations even if they were not properly immunized by the district attorney's action. Unless the district attorney had authority to grant the full range of immunity to which the plaintiff officers were entitled, the government may not oblige them to make statements at the risk that, if they do not do so, they might lose their jobs.[4]

Although we have said little about the inherent authority of a district attorney to grant immunity before criminal proceedings have started, we have made it clear that, after criminal proceedings have commenced, a prosecutor has unfettered authority concerning the withdrawal of charges against a defendant. Rule 12 (b) (1) (A) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 866 (1979), acknowledges that, without judicial approval, a prosecutor may make charge concessions to a defendant in coming to an agreed plea.[5] We have held that a district attorney's objection to a judge's acceptance of a plea tendered to a lesser offense than that charged must be respected because the prosecutor is asserting the constitutional authority of the executive. *Commonwealth* v. *Gordon*, 410 Mass. 498, 500 (1991). A prosecutor has the absolute discretion to enter a nolle prosequi. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18 (1923). Mass. R. Crim. P. 16, 378 Mass. 885 (1979). A judge may not nol pros a criminal charge or reduce such a

---

[4]We recognize that, in the day-to-day operations of a district attorney's office, prosecutors in effect grant immunity by deciding not to press particular charges for a variety of reasons. In many instances the prosecutor's decision is made unilaterally. In others, such as in plea bargain agreements, the prosecutor and a defendant enter into a consensual arrangement. In this case there is no indication of an agreement. We reject any possibility that, once the plaintiff officers denied the district attorney's authority to grant fully effective immunity, they could nevertheless obtain that immunity by relying on the district attorney's promise. Reliance in such circumstances would not be reasonable.

[5]Rule 12 was proposed in part to aid law enforcement efforts. Massachusetts Proposed Rules of Criminal Procedure for District and Superior Courts, Reporters' Notes at 196 (1976). "This is similar to an offer of immunity in exchange for one's testimony, but in many cases the defendant's culpability is too great to grant total immunity." *Id.*

charge without the consent of the prosecutor, the people's elected advocate. *Commonwealth* v. *Gordon, supra.* To do so would "usurp[] the decision-making authority constitutionally allocated to the executive branch." *Id.* at 501. A district attorney is entrusted with the task of allocating limited resources to maximize public protection. *Id.* at 500.

In *Commonwealth* v. *St. John*, 173 Mass. 566 (1899), we considered a district attorney's authority lawfully to offer immunity from criminal prosecution even before any charges had been brought or a grand jury convened. In that opinion, we suggested that at an investigatory stage a public prosecutor may lawfully promise immunity to a person in exchange for testimony. *Id.* at 569-570. The court held that promises of immunity given by police officials did not bar the bringing of criminal charges. *Id.* at 569. The court indicated in dicta that promises of immunity "made by the public prosecutor or with his authority" will be enforced. *Id.* The statement that a prosecutor may authorize someone to promise immunity suggests that a prosecutor has authority to grant immunity, and not just that, once the prosecutor has granted immunity, lawfully or unlawfully, the courts will honor his pledge if the person has reasonably relied on it.

We shall assume, without deciding, that a district attorney has authority to grant immunity to a person with respect to events as to which that person is obliged to make statements at the risk of loss of employment. The district attorney's authority extends, however, only to the limits of his district. Immunity from prosecution by a district attorney in another district, by the Attorney General, or by a United States attorney does not automatically flow from such a grant of immunity.

One who persists in the assertion that the promise does not fully protect his or her privilege against self-incrimination must be assured that the purported immunity (a) is effective Statewide[6] and (b) protects against use of any statements in

---

[6]Adequate assurances against prosecution within the Commonwealth might be obtained by following the procedure for notice to other prosecu-

the prosecution of any Federal crime.[7] It has not yet been shown that the plaintiff officers have been granted immunity in a manner either that other State prosecutors must respect or that Federal authorities must acknowledge by extending use and derivative use immunity. A witness who has received complete State immunity will be extended Federal use or derivative use immunity as to statements only if there is unavoidable coercion to testify. See *Garrity* v. *New Jersey*, 385 U.S. 493, 497-498 (1967); *United States* v. *Roberson*, 872 F.2d 597, 611-612 (5th Cir.), cert. denied, 493 U.S. 861 (1989).

The fact that an effective State grant of transactional immunity (which the Constitution of the Commonwealth mandates, *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 801 [1982]) only translates into use and derivative use immunity for Federal purposes (see *Murphy* v. *Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 79 [1964]) presents no obstacle to compelling a person to answer questions. Such a grant of immunity by a State is effective in extending the different protections against self-incrimination that the State and Federal Constitutions, respectively, require. The plaintiff officers have no right to insist on transactional immunity from Federal prosecution.

The circumstances of this case provide the plaintiff officers no assurance that the district attorney's letter binds all State prosecutors or obliges Federal courts to credit it. The judgment is vacated, and a new judgment shall be entered declaring that the grant of immunity extended by the district

tors in our immunity statute, which could lead to assent to the grant of immunity. See G. L. c. 233, § 20E (1994 ed.). Without at least the Attorney General's assent, the district attorney's grant of immunity standing alone cannot have Statewide effect.

[7] The record does not show conclusively that no Federal crime was involved in the subject of inquiry. It shows neither a grant of immunity by a Federal prosecutor nor circumstances that would require Federal prosecutors to extend "use and derivative use" immunity to any statements the plaintiffs might make. See *Kastigar* v. *United States*, 406 U.S. 441, 453 (1972); *Murphy* v. *Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 79 (1964); *United States* v. *Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994).

attorney for the Eastern District does not grant to the plaintiff police officers the protection against self-incrimination to which they are entitled under the Constitutions of the Commonwealth and the United States.[8]

*So ordered.*

---

[8] We do not grant any injunctive relief because we expect that the defendants will conform their conduct to the requirements imposed by our decision.