COMMONWEALTH vs. MICHAEL L. DORMADY.

Plymouth. March 7, 1996. - July 15, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

Constitutional Law, Self-incrimination, Public employment. Public Employ-
ment, Police. Witness, Immunity. Practice, Criminal, Indictment, Dis-
missal.

Discussion of cases considering a public employee's right to immunity in
criminal proceedings subsequent to having been compelled to testify on
the same subject at a disciplinary proceeding under threat of discharge
brought against him. [193-195]
In a criminal proceeding, the judge correctly dismissed the indictment on
the ground that the defendant, a police officer, had been compelled to
answer questions about the incident that was the subject of the indict-
ment at an internal police investigation and a subsequent civil service
adjudicatory hearing after sufficiently asserting his privilege against self-
incrimination guaranteed under art. 12 of the Massachusetts Declara-
tion of Rights. [195]
In the circumstances of a disciplinary hearing against a public employee,
the employee, a policeman, was entitled reasonably to rely on the police
chief's and town counsel's representation, made without the prior assent
of the Attorney General or district attorney, that he would be granted
transactional immunity if he testified at the proceeding. [195-198]


INDICTMENT found and returned in the Superior Court
Department on May 10, 1994.

A pretrial motion to dismiss was heard by Cortland A.
Mathers, J.

The Supreme Judicial Court granted an application for
direct appellate review.

Gregory I. Massing, Assistant Attorney General, for the
Commonwealth.

Max D. Stern (Adrian Sevier with him) for the defendant.

LIACOS, C.J. On May 10, 1994, the defendant, Michael L.
Dormady, was indicted by a grand jury for larceny by false
pretenses. The incident giving rise to the indictment occurred
while Dormady was a Duxbury police officer and resulted in

his dismissal from that police department. Dormady moved to dismiss the indictment on the basis that during a prior internal police investigation of the transaction and a subsequent civil service adjudicatory hearing, Dormady had been compelled to answer questions regarding the incident, and did so after being promised transactional immunity under art. 12 of the Declaration of Rights of the Massachusetts Constitution. A judge in the Superior Court dismissed the indictment. The Commonwealth appealed. We granted the Commonwealth's application for direct appellate review. We affirm the dismissal.

Michael Dormady was employed as a Duxbury police officer from 1974 until his dismissal in January, 1994. In 1991, he signed a purchase and sale agreement to purchase real property in Duxbury which lacked direct access from town roads. On several occasions, apparently twice while in uniform, Dormady visited Hilda Grace, a woman in her late seventies who owned real estate adjacent to Dormady's lot. At Dormady's request, Grace signed a deed granting Dormady a right of way over her property. Dormady subsequently began to construct a road over the right of way, tearing down a building in the process. Grace's niece filed a complaint with the Duxbury police claiming that Grace never intended to grant the right of way, but rather that Dormady represented to Grace that the deed was a document authorizing Dormady to attempt to sell Grace's property on her behalf.

The Duxbury police department began an internal affairs investigation, during which Dormady received two letters demanding a written report in response to questions. The letters each stated that, "[f]ailure to comply with any part of this order could result in disciplinary action." Dormady provided a two-page written response to the inquiries. On June 29, 1992, police Chief Enrico Cappucci found the allegations against Dormady to be unfounded. More than a year later, on October 12, 1993, Chief Cappucci reopened the investigation due to new information. An internal affairs hearing was held on October 22, 1993. A subsequent public hearing before a town hearing officer to determine just cause for disciplinary action was held on November 29, and December 21, 1993. Dormady, represented by counsel, testified at both hearings. He was later dismissed.

Prior to the commencement of the internal affairs hearing,

the following colloquy took place between Dormady's attorney and Chief Cappucci:

> COUNSEL FOR DORMADY: "My client and I will comply obviously but . . . as you know under that Springfield case [*Carney* v. *Springfield*, 403 Mass. 604 (1988)] as he is asked any questions, he has a right to be assured, cause there is no criminal intent to turn this into a criminal investigation whatsoever and it is strictly an administrative proceeding. You know I just want those assurances obviously now. . . . And again if [there] is any intent here to establish you know, I don't know how it would be done (inaudible) any criminal investigation, I would want it understood on the record that he would have this appropriate immunity."
>
> CHIEF CAPPUCCI: "I understand."

Officer Allen Gilbert was also called as a witness at the internal affairs hearing. Prior to being questioned, Gilbert's attorney requested assurances from counsel for the town of Duxbury:

> COUNSEL FOR GILBERT: "Under the Springfield case, if he's asked to and ordered to be answering questions, he's pretty much [guaranteed] immunity from criminal prosecution . . . right there."
>
> TOWN COUNSEL: "Right."
>
> COUNSEL FOR GILBERT: "So we have your verbal assurances and your understanding (inaudible) that immunity as well."
>
> CHIEF CAPPUCCI: "That's correct."

During the public hearing concerning disciplinary action against Dormady, Dormady's attorney sought to prevent Chief Cappucci from calling Dormady as a witness. The following colloquy ensued:

> TOWN COUNSEL: "I think that Officer Dormady is entitled to assurances under the Carney case that any

testimony that he might have is not going to be used as a basis for criminal prosecution, and if and when he receives those assurances from the police department, then at that time I believe it is a civil case and he can be called by either side to testify . . . . I don't think you can deny the police chief the right that he has in this hearing to call and ask the questions that he might have. And I think that's what we're dealing with, but I think those Carney assurances should be put on the record first anyway."

COUNSEL FOR CHIEF CAPPUCCI: "We have no objection to that, and I assume you're referring to what would be in the nature of use immunity as to just the use of whatever testimony he gives at this proceeding. . . ."

COUNSEL FOR DORMADY: "Well in terms of Carney, I would suggest that both — not only Carney but any other cases regarding any kinds of immunity, whether transactional or use, whatever the current law is, is that he be provided with all the assurances provided by the current law."

The Commonwealth argues that the Superior Court judge erred in dismissing the indictment against Dormady because (1) Dormady failed adequately to assert his art. 12 privilege against being compelled to furnish evidence against himself, (2) the police chief and town counsel lacked authority to grant Dormady transactional immunity for his testimony, and (3) Dormady should receive "use" and "derivative use" immunity only, which would not require dismissal of the indictment. We disagree.

A public employer has the power to compel the testimony of a public employee regarding that employee's ability directly to perform required governmental tasks or the employee's general fitness for public service. *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 38 (1975), cert. denied sub nom. *Broderick* v. *DiGrazia*, 423 U.S. 1048 (1976). Accord *Patch* v. *Mayor of Revere*, 397 Mass. 454, 455 (1986). Such testimony, however, cannot be compelled under threat of discharge absent a grant of immunity, and a public employee cannot be discharged for refusing to waive that immunity to which he

or she is entitled. *Gardner* v. *Broderick*, 392 U.S. 273, 279 (1967). *Garrity* v. *New Jersey*, 385 U.S. 493, 500 (1967). *Broderick* v. *Police Comm'r of Boston*, supra at 38. See *Commonwealth* v. *Harvey*, 397 Mass. 351, 356-357 (1986) (no threat of discharge); *Silverio* v. *Municipal Court of the City of Boston*, 355 Mass. 623, 630, cert. denied, 396 U.S. 878 (1969) (no claim of privilege against self incrimination). The Fifth Amendment to the United States Constitution requires that statements compelled under threat of job loss or other disciplinary sanction be suppressed in a criminal proceeding coextensively with the right against compelled self-incrimination. This has been interpreted by Federal courts to amount to "use" and "derivative use" immunity.[1] *Garrity* v. *New Jersey, supra.* See *Baker* v. *Lawrence*, 379 Mass. 322, 330-331 (1979). We have construed art. 12 more broadly, however, to provide public employees in such situations with transactional immunity.[2] *Carney* v. *Springfield*, 403 Mass. 604, 610 (1988). See *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 797-801 (1982) (transactional immunity required to compel private citizen to answer civil investigative inquiries); *Cabot* v. *Corcoran*, 332 Mass. 44, 51-52 (1954) (transactional immunity sufficient to compel testimony before special commission on organized crime); *Emery's Case*, 107 Mass. 172,

---

[1]In *Counselman* v. *Hitchcock*, 142 U.S. 547, 586 (1892), the United States Supreme Court, interpreting the Federal immunity statute, held that the Fifth Amendment to the United States Constitution required "absolute immunity against future prosecution" for the incident out of which the testimony arose. The Court subsequently interpreted *Counselman* to require only use and derivative use immunity for compelled testimony, and not transactional immunity. *Kastigar* v. *United States*, 406 U.S. 441, 454 (1971). Transactional immunity is that immunity which prohibits "prosecution for offenses to which compelled testimony relates." *Id.* at 443. Use and derivative use immunity protect against "the use of compelled testimony and evidence derived therefrom." *Id.* See *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795 n.4 (1982).

[2]General Laws c. 233, §§ 20C-20I (1994 ed.), vests the power to grant immunity to grand jury witnesses for certain enumerated crimes in a Justice of the Supreme Judicial Court. See *Grand Jurors for Middlesex County for the Year 1974* v. *Wallace*, 369 Mass. 876, 879 (1976). A Superior Court judge may also grant immunity to a witness in a criminal trial under narrow circumstances. G. L. c. 233, § 20F. Various other statutes expressly confer immunity. See *Attorney Gen.* v. *Colleton, supra* at 797 n.8 (collecting statutes). The immunity invoked in this case, however, derives from the Constitution. See *id.* at 796-801; *Baker* v. *Lawrence*, 379 Mass. 322, 331 n.14 (1979).

185 (1871) (art. 12 transactional immunity applies in legislative hearings).

The judge's findings that Dormady's testimony was compelled, and that he sufficiently asserted his privilege against compelled self-incrimination embodied in art. 12 were not clearly erroneous and will be upheld. See *Kendall* v. *Selvaggio*, 413 Mass. 619, 625 (1992). Dormady was summoned to respond to inquiries under threat of disciplinary action, and it is that threat of punishment which compelled his testimony. A June 25, 1992, memorandum to Dormady stated, "[y]ou are currently being investigated . . . . You are hereby ordered to submit a report directly to me . . . . This entire to/from is to be considered a direct written order. Failure to comply with any part of this order could result in disciplinary action." Correspondence following the reopening of the investigation ordered Dormady to report to Chief Cappucci's office at a specified date and time to answer questions and further instructed that "[s]hould you wish to have an attorney present you may. However, you are being ordered to report here and answer questions whether you have an attorney present or not." Prior to Dormady's testimony at both hearings, his counsel requested assurances of proper immunity under our decision of *Carney* v. *Springfield, supra.*

No particular words are required to raise the privilege under art. 12. See *Quinn* v. *United States,* 349 U.S. 155, 162 (1955); *Commonwealth* v. *Koonce,* 418 Mass. 367, 378 (1994), and cases cited (art. 12 protection to be construed liberally and judge's finding that testimony was involuntary entitled to substantial deference). Dormady objected to being called as a witness, requested assurances of immunity, and testified only after receiving those assurances. Compare *Commonwealth* v. *Harvey, supra* at 357 & n.6 (testimony was not compelled where defendant was not threatened with disciplinary sanctions and answered questions voluntarily); *Ross* v. *Crane,* 291 Mass. 28, 30, 33 (1935) (witness testified without protest). We agree that Dormady's attempt to invoke the protection of the *Carney* case was sufficient to indicate his objection to testifying absent a grant of transactional immunity. The judge committed no error in so ruling.[3]

The Commonwealth next argues that any grant of transac-

---

[3]The Commonwealth does not rely in its principal brief on the contention that Dormady waived any art. 12 privilege by replying to the original

tional immunity was invalid, as the chief of police and town counsel were without authority to bestow such privilege. The Commonwealth relies heavily on our recent case of *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229 (1995). In that case we held that a public employee compelled to submit to a polygraph examination under threat of disciplinary sanctions is entitled to adequate assurances that a grant of transactional immunity binds other State prosecutors and protects against use of the statements in a Federal prosecution. *Id.* at 233-234. We assumed, without deciding, that a district attorney has authority to grant transactional immunity to a person compelled to make disclosures under threat of loss of employment, and that a person would be adequately protected against prosecution within the Commonwealth only if the Attorney General or other prosecutors within the Commonwealth assented to the grant of immunity. *Id.* at 233 & n.6. *Baglioni* clarifies that a public employee cannot be compelled to testify even after a purported grant of immunity by a police chief or town counsel. That case explicitly did not address the difficulty posed by such a witness's reasonable reliance on a promise of immunity given without authority. *Id.* at 231. Such is the problem we face here, namely, whether a promise of immunity to a public employee compelled to testify under threat of disciplinary sanctions, and reasonably relied on by him, should be enforced when given by a police

inquiries in written form. It seeks, however, to raise the issue of waiver for the first time in its reply brief. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Travenol Lab., Inc.* v. *Zotal, Ltd.*, 394 Mass. 95, 97 (1985) (arguments raised in reply brief need not be considered). The Commonwealth cites two cases in its reply brief, both of which involve witness testimonial privilege and not immunity for an accused. See *Luna* v. *Superior Court*, 407 Mass. 747, 750, cert. denied, 498 U.S. 939 (1990); *Matter of De-Saulnier (No. 2)*, 360 Mass. 761, 765-766 (1971). Witness testimony must be voluntarily given in order to waive a later invocation of protection under art. 12. *Taylor* v. *Commonwealth*, 369 Mass. 183, 189-190 (1975), and cases cited. See 8 J. Wigmore, Evidence § 2276 (2), at 459-475 (McNaughten rev. ed. 1961). Further, "waiver by testimony is limited to the proceeding in which it is given and does not extend to subsequent proceedings." *Commonwealth* v. *Borans*, 388 Mass. 453, 457 (1983). Finally, unsworn statements given to police in the ordinary course of a criminal investigation do not act to waive a later claim of testimonial privilege. *Taylor* v. *Commonwealth, supra* at 191. Even if the issue of waiver were properly before us, the doctrine of testimonial privilege does not allow a finding of waiver in the circumstances of this case.

chief and town counsel without the prior assent of the Attorney General or district attorney.[4]

We have, in the past, upheld promises made by a district attorney or one representing the district attorney's office to a defendant who detrimentally relied on the promise. See *Commonwealth* v. *Mr. M.*, 409 Mass. 538, 543-544 (1991) (if sentencing recommendation relied on by defendant were made by representatives of district attorney's office, it would be enforced); *Matter of DeSaulnier (No. 2)*, 360 Mass. 761, 764 (1971) (upholding stipulation of immunity "to ensure that the public faith pledged to [defendant] is duly and fully kept"); *Commonwealth* v. *Benton*, 356 Mass. 447, 448 (1969) (assistant district attorney's promise to enter a nolle prosequi enforced in accord with "highest degree of ethics"). See *Santobello* v. *New York*, 404 U.S. 257, 262 (1971) (prosecutor's promise not to make sentencing recommendation must be fulfilled). But see *Commonwealth* v. *St. John*, 173 Mass. 566, 569-570 (1899) (police detective's promise of immunity given in context of criminal investigation in exchange for testimony did not bar indictment). Cf. *Commonwealth* v. *Mr. M.*, *supra.* We have not decided the exact limits of a district attorney's authority to grant transactional immunity absent reasonable reliance on a stipulation made by a representative of the district attorney's office. See *Baglioni* v. *Chief of Police of Salem*, *supra* at 231-233 (assuming without deciding that district attorney has authority to grant immunity). We need not do so today, and note only that the question is one appropriate for a legislative answer.

---

[4]*Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229 (1995), also refutes the Commonwealth's argument that a public employee need only be given use immunity and not transactional immunity in that it assumes that only transactional immunity, properly granted, suffices as to public employees, as well as for private citizens. "Unless the district attorney had authority to grant the full range of immunity to which the plaintiff officers were entitled, the government may not oblige them to make statements at the risk that, if they do not do so, they might lose their jobs." *Id.* at 232. This is consistent with the statement in *Carney* v. *Springfield*, 403 Mass. 604, 610 (1988): "In Massachusetts, art. 12 of the Declaration of Rights requires transactional immunity to supplant the privilege against self-incrimination, even in the context of public employment." See *id.* at 611, stating that *Baker* v. *Lawrence*, 379 Mass. 322 (1979), *Silverio* v. *Municipal Court of the City of Boston*, 355 Mass. 623, cert. denied, 396 U.S. 878 (1969), and *Patch* v. *Mayor of Revere*, 397 Mass. 454 (1986), are all inapposite as no claim was made in those cases under art. 12.

The issue before us today is not, as the Commonwealth would have it, a question of the power of lesser officials to grant immunity. It is instead whether, where reasonable reliance is placed on a promise of transactional immunity by such persons, there is immunity as a matter of constitutional right. "Indeed, because immunity follows in the circumstances as a matter of constitutional right, an express grant of immunity seems unnecessary." *Patch* v. *Mayor of Revere*, 397 Mass. 454, 456 (1986).

The indictment against Dormady based on conduct which was the subject of his compelled testimony cannot stand. To hold otherwise would be to thwart the fundamental principle that the sovereign is to be held to the highest ethical standards. See *Matter of DeSaulnier (No. 2), supra; Commonwealth* v. *Benton, supra* at 449. See also *Raley* v. *Ohio,* 360 U.S. 423, 437-438 (1959) (convictions for failing to answer State commission interrogatories violated defendants' due process rights where commission members did not inform defendants of State immunity statute). Dormady did not waive his art. 12 privilege against furnishing evidence against himself. He testified, under threat of disciplinary sanctions, only after seeking and receiving assurances of immunity under *Carney* v. *Springfield*, 403 Mass. 604 (1988). That case intimated in dictum that the police chief might have authority to grant immunity absent the assent of the district attorney. It was the most recent statement of the law at that time. See *Commonwealth* v. *Kerr*, 409 Mass. 11, 15 (1990) (applying law as it existed at time of questioning). Dormady received assurances not only from Chief Cappucci, but also from town counsel. Further, town counsel explicitly preserved the assurance of immunity on the record. It was not unreasonable, in light of *Carney*, for Dormady to rely on the assurances given by Chief Cappucci and town counsel.

Our conclusion makes immaterial the Commonwealth's claim that use and derivative use immunity would sufficiently protect Dormady's interests should he be prosecuted. We note, however, that for the reasons extensively reviewed in *Attorney Gen.* v. *Colleton*, 387 Mass. 790 (1982), and its progeny, we are not disposed to throw aside the long-standing jurisprudence of this Commonwealth and accept the concept of use immunity, whether it be for public employees or private citizens. Dismissal of the indictment was the proper remedy

where Dormady asserted his constitutional privilege against self-incrimination under art. 12, sought immunity to the fullest extent available under the law, and testified in reasonable reliance on a promise of transactional immunity. The dismissal of the indictment is affirmed.

*So ordered.*