# Ronald Bellin *vs.* Frederick J. Kelley, Jr., & others.[1]

No. 97-P-2151.

Middlesex. June 4, 1999. - February 18, 2000.

Present: Greenberg, Gillerman, & Rapoza, JJ.

Further appellate review granted, 431 Mass. 1104 (2000).

*Criminal Offender Record Information. Labor,* Polygraph test, Discharge. *Statute,* Construction.

Section 2.04(5)(a) of 803 Code Mass. Regs., promulgated by the criminal history systems board and authorizing in certain circumstances the distribution of criminal offender record information (CORI) to any member of the public, contravenes the provisions set forth in G. L. c. 6, § 172, restricting the dissemination of CORI, and exceeds the legislative grant of authority to the board; the regulation was invalid. [577-578]

Where issues of material fact remained with respect to a claim under G. L. c. 6, § 177, for wrongful dissemination of criminal offender record information, the claim was remanded for further proceedings in the Superior Court. [578-579]

In a civil case, there was no evidence that an employer's receipt of wrongfully disseminated criminal offender record information regarding an employee constituted a violation of G. L. c. 6, § 172, and summary judgment was correctly entered in favor of the employer on that claim and related tort claims. [579-580]

An employer properly, under the holding of *Barker* v. *Lawrence*, 379 Mass. 322 (1979), could require or request that an employee suspected of a crime in connection with his employment take a polygraph examination administered by law enforcement officials conducting an investigation of the criminal activity, and such a request or requirement was not a violation of G. L. c. 149, § 19B(2); summary judgment was properly entered in favor of the employer on tort claims based on such an asserted violation. [580-582] Greenberg, J., dissenting.

Civil action commenced in the Superior Court Department on June 28, 1995.

The case was heard by *Isaac Borenstein*, J., on motions for summary judgment.

*Ira H. Zaleznik* for the plaintiff.

---

[1] Kelley Consultants, Inc.; the town of Hopedale; and Wayne J. Minichielli.

*David D. DeVeau* for town of Hopedale & another.

*George L. Dresser* (*Nadia R. Totino Beard* with him) for Frederick J. Kelley, Jr., & another.

*Thomas F. Reilly*, Attorney General, *Pamela L. Hunt*, & *Peter T. Wechsler*, Assistant Attorneys General, for the Attorney General, amicus curiae, submitted a brief.

GILLERMAN, J. The plaintiff was employed by the defendant Kelley Consultants, Inc. (company), a private collection agency whose business included collecting delinquent excise taxes for cities and towns. The defendant Frederick J. Kelley, Jr. (Kelley), was the president and treasurer of the company. There had been a theft of cash at the company's premises, and the plaintiff was suspected of being the thief. The defendant Wayne Minichielli, a Hopedale police officer investigating the theft, obtained the plaintiff's criminal offender record information (CORI)[2] and gave Kelley that information after the plaintiff told Minichielli that he would not take a polygraph test. Kelley then threatened the plaintiff with the loss of his position unless he took the test, and the plaintiff finally agreed. Kelley learned the test results from Minichielli and discharged the plaintiff.[3] No criminal charges were ever brought against the plaintiff for the theft.

The plaintiff brought suit, asserting claims against the company and Kelley for wrongful termination of employment, for violation of G. L. c. 149, § 19B(2) (set out in note 11, *infra*), for wrongfully subjecting him to a lie detector test, and for violation of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I. He also brought claims under G. L. c. 6, § 177,[4] against the company, Kelley, Minichielli, and the town of Hopedale al-

---

[2]General Laws c. 6, §§ 167-178B (the CORI Act), and the regulations promulgated thereunder, regulate the collection and dissemination of an individual's criminal record history; that history is commonly referred to as "CORI."

[3]The facts appearing in this opinion are taken from undisputed facts, the deposition testimony of the plaintiff, and those portions of the deposition testimony of Kelley and Minichielli which were put forward by the plaintiff in affidavit form in opposition to the defendants' motion for summary judgment. Since the plaintiff opposed the motion, we assume that the facts set out in the plaintiff's summary judgment materials are true, and we make all logically permissible inferences in the plaintiff's favor. See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-556 (1976); *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983); *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. 202, 203 (1991).

[4]General Laws c. 6, § 177, inserted by St. 1972, c. 805, § 1, provides that a person aggrieved by a violation of § 172 may institute a civil action for

leging the wrongful dissemination of the plaintiff's CORI in violation of G. L. c. 6, § 172; a claim against Minichielli for tortious interference with the employment relationship; claims against Minichielli and Hopedale for invasion of·privacy and civil rights violations (G. L. c. 12, § 11I); and a claim against the town under G. L. c. 258, § 2. Defendants Hopedale and Minichielli and the defendant company and Kelley filed motions for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 924 (1974). Both motions were allowed, and the plaintiff has appealed.

We state the material facts in more detail.

During the weekend of August 1, 1992, Kelley's office at Evergreen Avenue in Hopedale was broken into, and about $7,000 in cash was stolen. On August 3, 1992, Minichielli, a police detective employed by the town, was dispatched to conduct an investigation. A preliminary check for fingerprints and other evidence of the crime yielded nothing significant.

Minichielli suspected that it was an inside job because the intruder seemed to know where the money was. He asked Kelley for a list of employees and ran a background check on all of them. He discovered that the plaintiff had a prior criminal record.[5] On September 23, 1992, Minichielli met with Kelley and disclosed this information. Kelley told Minichielli that he was concerned about the plaintiff's possible involvement in the break-in because he was late for work on the morning after the break-in and appeared to be very nervous.

On September 28, 1992, Minichielli contacted the plaintiff and asked him to come to the police station. At the interview, Minichielli read the plaintiff his Miranda rights and told him that he was a prime suspect in the investigation. In response, the plaintiff denied any involvement in the break-in and theft.

Several days later, Minichielli asked the plaintiff to take a lie detector test. He told the plaintiff that if he did not take the test "he [Minichielli] was going to tell . . . Kelley that [the plaintiff] had a record and [the plaintiff] would be fired." The plaintiff refused to take the test. Later, the plaintiff and Kelley talked.

---

damages. If it is determined that the violation was "willful . . . , the violator shall not be entitled to claim any privilege absolute or qualified," and he shall be liable for actual damages and exemplary damages.

[5]The record on appeal is unclear as to the content of the plaintiff's criminal record, but it appears that the record had to do with bad check offenses and drug related charges, none of which was prosecuted to a conclusion.

Kelley told the plaintiff (according to the plaintiff's deposition testimony) that because the plaintiff had "refused to take a lie detector test" and since he "had a record," the plaintiff was "through" unless he took the lie detector test. The plaintiff then agreed to take the test — an agreement he would not have made (we infer favorably to the plaintiff) unless faced with the sanction of loss of his job if he refused. The plaintiff took the test, which was administered at the State police barracks in Southborough. He did poorly when asked key questions concerning his whereabouts on the date of the break-in. The plaintiff was fired shortly after Kelley learned that the results of the test were unfavorable.

The police investigation ended without anyone being charged with the theft.

1. *The CORI Act claim against all defendants.* General Laws c. 6, § 172 (as amended through St. 1990, c. 319, §§ 7-12), of the CORI Act, see note 2, *supra,* permits the dissemination of criminal record information "only to (a) criminal justice agencies; (b) such other agencies and individuals required to have access to such information by statute . . . ; and (c) any other agencies and individuals where it has been determined [by the criminal history systems board (board), see c. 6, § 168,] that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy." Access under clause (a) is limited to "that necessary for the actual performance of the criminal justice duties of criminal justice agencies . . ."; access under clause (b) is limited to "that necessary for the actual performance of the statutory duties of agencies and individuals . . ."; and access under clause (c) is limited to "that necessary for the actual performance of the actions or duties sustaining the public interest . . . .." Further as to clause (c), the board may act only upon the favorable vote of a two-thirds majority of the members present and voting determining and certifying that "the public interest in disseminating such information to such party clearly outweighs the interest in security and privacy." In sum, the focus of clauses (a), (b), and (c) is to limit and tightly control the persons and agencies to whom CORI may be made available. Plainly excluded from these three approved groups is the undifferentiated public.

The underlying legislative purpose is to protect the privacy and security of those whose criminal record may no longer be

relevant to current decisions regarding such persons. Thus G. L. c. 6, § 171, first par. (as inserted by St. 1972, c. 805, § 1), provides, inter alia, that the board shall promulgate regulations "(c) assuring the security of criminal offender record information from unauthorized disclosures at all levels of operation." The second paragraph of § 171 provides: "The board shall cause to be initiated for employees of all agencies that maintain, receive, or are eligible to maintain or receive criminal offender record information a continuing educational program in the proper use and control of such information." See *Commonwealth* v. *Vickey*, 381 Mass. 762, 765 (1980) (§ 171 reveals "the legislative purpose to protect individuals from unnecessary and overbroad dissemination of criminal record information").

Minichielli does not attempt to justify his dissemination of the plaintiff's CORI to Kelley under the provisions of § 172. Rather, he relies on the provisions of a regulation of the board, 803 Code Mass. Regs. § 2.04(5) (1995), which is captioned, "Authorization for *Public* Dissemination of CORI" (emphasis supplied). Subparagraph (a) provides: "A criminal justice agency with official responsibility for a pending criminal investigation or prosecution may disseminate CORI that is specifically related to and contemporaneous with an investigation or prosecution." The plaintiff responds that the regulation was in excess of the authority granted by the Legislature.[6,7]

General Laws c. 6, § 168, third par. (as appearing in St. 1979, c. 702, § 2) — cited by the board as authority for the promulgation of the regulation — gives the board the authority to "promulgate regulations regarding the collection, storage, access, *dissemination*, content, organization, and use of criminal offender record information" (emphasis supplied). However, the authority granted to the board under § 168 may not be *exercised*

---

[6]Because of the public importance of issues regarding the validity of 803 Code Mass. Regs. § 2.04(5)(a), following the argument of this case we requested and received a brief of the Attorney General as amicus curiae on the issue of the validity of the regulation. The plaintiff was given leave to respond to the Attorney General's brief. These postargument events delayed the publication of this opinion.

[7]There is also a question (which we need not decide) whether the regulation, if valid, is available in this case. The authorization for "public dissemination" under § 2.04(5)(a) extends to "[a] criminal justice agency," not to each employee of the agency, and there is no showing by Minichielli that he was authorized by a criminal justice agency to make the disclosure to Kelley.

in a manner that conflicts with the intent of the Legislature as expressed in § 172. Section 172, as we have seen, provides for carefully restricted groups of persons and agencies to whom CORI may be released.

In addition to that limitation, § 172 makes it clear that *each* disclosure by an agency is important. Thus, the fourth paragraph of § 172 requires each agency to maintain "a listing of the agencies *or individuals* to which it has released or communicated such information" ·(emphasis supplied). These listings are subject to periodic review by the board to determine whether there has been a violation of law. There is no showing in this case that Kelley's name was added to the list maintained by the Hopedale police department. Further still, the sixth paragraph of § 172 provides that "any person" may request conviction data, but each such request must be made to the board for approval. There is no showing in this case that such a request, if made by Minichielli individually, was approved by the board.

Section 2.04(5)(a) of 803 Code Mass. Regs., on the other hand, provides for the dissemination of CORI *without limitation* except only that the CORI dissemination must be "specifically related to and contemporaneous with an investigation or prosecution." The effect is to authorize the distribution of CORI *to any member of the public* so long as the CORI dissemination is connected to an ongoing investigation. This broad grant of authority to each criminal justice agency simply and completely undoes the carefully drafted limitations imposed by the provisions of § 172 regarding authorized recipients of CORI. The consequence must be that the regulation exceeds the legislative grant of authority to the board and is invalid. See *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 249 (1985) ("The duty of this court is to interpret the statute according to the intent of the Legislature and common sense. We are not simply to provide our imprimatur for regulations that the examiners might be able to defend on an excessively broad reading of the statute"). Here the regulation of the board "is not supported by the language of the statute, the context from which it arose, . . . or the legislative policy on which the statute is based." *Ibid.*

We must measure Minichielli's conduct, then, against the standard of c. 6, § 172, not 803 Code Mass. Regs. § 2.04(5)(a). On that basis, Minichielli's distribution of the plaintiff's CORI

to Kelley did not fall within the protection of clauses (a), (b), or (c), of c. 6, § 172.

It does not follow, however, that Minichielli is necessarily liable to the plaintiff under G. L. c. 6, § 177 (see note 4, *supra*). General Laws c. 258, § 10(*a*) (inserted by St. 1978, c. 512, § 15), provides that no claim based on an act or omission of a public employee may be maintained when the employee exercised "due care" in the execution of any regulation of a public employer (i.e., here, the board) whether or not the regulation is valid. That is to say, there can be no "willful violation" of § 172 (the prerequisite of an action for damages under § 177) by Minichielli if he was acting *with due care* under 803 Code Mass. Regs. § 2.04(5)(a), which was not an invalid regulation when he acted. Whether Minichielli acted with due care in making CORI available to Kelley is a question of fact that must be resolved at trial, see *Doe* v. *Blandford*, 402 Mass. 831, 836 (1988), and this claim must be remanded to the Superior Court.

Further, as to the plaintiff's CORI Act claim under § 177 against Kelley and the company, the plaintiff argues that Kelley had no right to use the plaintiff's CORI in discharging him.[8] *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 270-271 (1991), precludes recovery by the plaintiff. In *Bynes* the court held that to prove a violation of G. L. c. 6, § 172,[9] the plaintiff must show that the individual or agency receiving CORI was "in violation of the statute and at fault," *id.* at 271. There is no evidence in this case (just as there was none in *Bynes*) that Kelley or the company, in *receiving* plaintiff's CORI information, violated the CORI Act and was at fault in doing so. See *ibid.* Whether Kelley's use of the plaintiff's CORI violates other

---

[8]As noted above, the plaintiff testified in his deposition that Kelley said that Minichielli told Kelley that the plaintiff had "a record." We assume, favorably to the plaintiff, that this disclosure by Minichielli to Kelley put Kelley in receipt of the plaintiff's CORI.

[9]General Laws c. 6, § 172, last par., provides in relevant part: "Any individual or agency, public or private, that receives or obtains criminal offender record information, in violation of the provisions of this statute, whether directly or through any intermediary, shall not collect, store, disseminate, or use such criminal offender record information in any manner or for any purpose. . . ."

legal constraints is discussed *infra*.[10]

2. *The polygraph test*. The plaintiff claims that he was wrongly coerced by Kelley and the company to take a lie detector test which was administered by the Massachusetts State Police. At issue is G. L. c. 149, § 19B(2), which we set forth in the margin.[11] The judge concluded that there was no violation of § 19B(2), and we agree.

In *Baker v. Lawrence*, 379 Mass. 322 (1979), a case involving an investigation by the head of a police department into a theft from a store alleged to have been committed by police officers in the course of their duties, the court discussed and analyzed § 19B[12] in some detail. We follow that analysis.

The first sentence of § 19B(2) forbids all employers, public and private, to impose polygraph tests on their employees, or to request their employees to undergo such tests. The second sentence creates an exception to the first sentence. "The situation plainly within the exception is one where a law enforcement agency is conducting an investigation into a crime alleged to have been committed by a person in connection with the duties of his employment, and the agency is permitted, i.e., not

---

[10]We note that in *Whirty v. Lynch*, 27 Mass. App. Ct. 498 (1989), upon which Minichielli relies, the prosecutor released CORI to a judge who had before him bail matters regarding the accused, and we held that the release was "appropriate" because the information "would bear on whether the accused should be admitted to bail and at what dollar level." *Id.* at 501. However, subparagraph (6) of 803 Code Mass. Regs. § 2.04 provides that no provision of the regulations shall be construed to prohibit dissemination of CORI "in the course of criminal proceedings" and thus the release of CORI to the judge was expressly authorized. There were no criminal proceedings in this case.

[11]General Laws c. 149, § 19B(2), as appearing in St. 1985, c. 587, § 1, provides as follows: "It shall be unlawful for any employer or his agent, with respect to any of his employees, or any person applying to him for employment, including any person applying for employment as a police officer, to subject such person to, or request such person to take a lie detector test within or without the commonwealth, or to discharge, not hire, demote or otherwise discriminate against such person for the assertion of rights arising hereunder. *This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations*" (emphasis supplied).

[12]The statute discussed in *Baker*, § 19B, as appearing in St. 1973, c. 620, was rewritten by St. 1985, c. 587, § 1, and now appears as § 19B(2), see note 11, *supra*. Statute 1985, c. 587, § 1, amended the first sentence of this section after the decision in *Baker v. Lawrence*, 379 Mass. 322 (1979). The second sentence, which we discuss in the text, was not amended.

forbidden, to administer a polygraph test to that employee. If, then, the employee refuses or indicates hesitance to submit to the test at the agency's request, the employer (relieved of the prohibition of the first sentence of § 19B [now § 19B(2), see note 12, *supra*]) may request that the employee do so, with implied job sanctions if the employee finally declines." *Baker* v. *Lawrence*, 379 Mass. at 327. See *Local 346, Intl. Bhd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. 429, 440-442 (1984) (union's acquiescence to police department's demand for submission of its employees to lie detector test is not required under § 19B, citing *Baker* v. *Lawrence, supra*).

The plaintiff would distinguish *Baker*: he argues that it applies only to an employee who is under investigation for having committed a crime "while on the job." We see no basis for imposing this limitation on *Baker*. *Baker* itself eschewed such a limitation. See *id.* at 327 n.8: "We have dealt here with the core meaning of the excepting language of § 19B [i.e., investigation of criminal acts alleged to have been committed by employees in connection with the duties of employment]. We are not called on to explicate any possible ampler meaning."

Plainly, there must be a sufficient nexus between the crime under investigation and the suspect's employment so that pressure by the employer on the employee to take the test may be correctly seen, not as an act of a vigilante, but as a reasonable effort by the employer to maintain an honest work force and a working environment secure against criminal incursions. See *Baker* v. *Lawrence*, 379 Mass. at 329 n.11 (the legislative intent was "to balance the privacy interests of employees against the legitimate needs of certain criminal investigations"). In *Baker*, the crime (theft of property from a store) was allegedly committed in the course of performing the employees' duties; here, the suspected crime was a robbery, allegedly by an off-duty employee, of company assets on the company's premises. The victim in *Baker* was a third party; the victim in this case was the company itself. As we see it, the case for applying the § 19B(2) exception is at least as compelling as it was in *Baker*.

We conclude that neither Kelley nor the company violated G. L. c. 149, § 19B(2).[13] The plaintiff's claim against Kelley and the company for an unlawful termination of his at-will

---

[13]The plaintiff also argues that without a grant of immunity, interrogation in a lie detector test would violate the plaintiff's privilege against self-incrimination, citing *Attorney Gen.* v. *Colleton*, 387 Mass. 790 (1982), and

employment thus also fails, as does his claim for a violation of civil rights.

We sum up the results of the plaintiff's appeal. There having been no violation of G. L. c. 6, § 172, or of G. L. c. 149, § 19B(2), by Kelley or the company, the order granting summary judgment for those defendants is affirmed. That portion of the order granting summary judgment to Minichielli and the town on the claim for violation of G. L. c. 6, § 172 (count IV), is reversed, and that claim will be remanded for further proceedings.[14] Because G. L. c. 258, § 1(c), prohibits the claim against the town for invasion of privacy, the entry of summary judgment for the town on that claim may stand. Because the ruling that there was no violation of G. L. c. 6, § 172, was the sole basis for the grant of summary judgment to Minichielli and the town on the claim for violation of the Civil Rights Act, G. L. c. 12, § 11I (count VII), and to Minichielli on the claims for tortious interference with the employment relation (count V) and invasion of privacy (count VI) and because the other issues raised by the defendants have not been ruled on below, the order insofar as it grants summary judgment on those claims is

---

Carney v. Springfield, 403 Mass. 604 (1988). Neither opinion is apposite. In Colleton, the coercion was applied by the State. Id. at 790-791. Here, as we state in the facts, supra, and as the plaintiff acknowledges in his brief, the plaintiff yielded to the threats of Kelley and not to the threats of Minichielli: "Solely to prevent his termination [by Kelley], Bellin agreed to take the test" (emphasis supplied). Thus when Bellin presented himself to the State Police barracks in Southborough, he submitted to the test by consent and not as a result of coercion by the State. See Phillips v. Youth Development Program, Inc., 390 Mass. 652, 658 (1983) ("art. 12 of the Massachusetts Declaration of Rights . . . inherently is concerned with governmental action"). Of course, State action is required for purposes of the Fourteenth Amendment to the United States Constitution. See id. at 659.

Carney involved a public employee and does not bear on this case. See id. at 608-609. See also Baker v. Lawrence, 379 Mass. at 330. Moreover, the court pointed out that "[a]n employer may compel an employee under threat of discharge to answer questions reasonably related to job performance." Carney v. Springfield, 403 Mass. at 610. The Fifth Amendment to the United States Constitution precludes, however, use of any answers obtained involuntarily from the employee in a subsequent criminal proceeding. Carney v. Springfield, supra. See Baker v. Lawrence, 379 Mass. at 330-331.

[14]We do not decide whether the town may properly be sued under G. L. c. 6, § 177, or whether that claim is permitted against the town under G. L. c. 258, §§ 2 & 10, as that issue was not decided below and has not been adequately argued on appeal. Compare Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 782 (1987).

reversed, and the claims will be remanded to the Superior Court for further proceedings.

Therefore, the judgment insofar as it dismisses the claims against Minichielli and the town of Hopedale in count IV for violation of G. L. c. 6, § 172, dismisses the claim against Minichielli in count VI, and dismisses counts V, VII, and VIII is reversed. The judgment insofar as it dismisses the claims against Kelley and Kelley Consultants, Inc., and the claim against the town of Hopedale in count VI for invasion of privacy is affirmed.

*So ordered.*

GREENBERG, J. (dissenting in part). I respectfully dissent from part 2 of the majority opinion. General Laws c. 149, § 19B(2), as appearing in St. 1985, c. 587, § 1, provides in relevant part that "[i]t shall be unlawful for any employer or his agent, with respect to any of his employees . . . to subject such person to, or request such person to take a lie detector test . . . or to discharge . . . such person for the assertion of rights arising hereunder." There follows an exception contained in the second sentence of the statute which permits law enforcement agencies to administer such tests "as may be otherwise permitted in criminal investigations." I dissent because I conclude that in these circumstances the exception was not applicable.

"[A]n exception from the coverage of a statute is ordinarily to be construed narrowly so as to prevent the purposes of the statute from being rendered ineffective." *Singer Friedlander Corp.* v. *State Lottery Commn.*, 423 Mass. 562, 565 (1996), quoting from *Martin* v. *Rent Control Bd. of Cambridge*, 19 Mass. App. Ct. 745, 747 (1985). To put it colloquially, an exception not construed narrowly "would swallow the rule." *Brum* v. *Dartmouth*, 428 Mass. 684, 693 (1999). The majority's interpretation of G. L. c. 149, § 19B(2), allows just that. Under their interpretation, any time a crime is reported at a place of business, any one of that business's employees could be fired for refusing to take a lie detector test, without anything more. I do not believe the Legislature intended this statute to protect so little.

The majority likens the situation here to *Baker* v. *Lawrence*, 379 Mass. 322 (1979), a case in which the Supreme Judicial

Court held that an investigation, conducted by the administrative head of a municipal police department into a theft at a store allegedly committed by police officers, could include a demand that the officers take a lie detector test. Justice Kaplan explained in *Baker* that the exception applies to circumstances "where a law enforcement agency is conducting an investigation into a crime alleged to have been committed by a person in connection with the duties of his employment, and the agency is permitted, i.e., not forbidden, to administer a polygraph to that employee." *Id.* at 327.

Even so, a grant of adequate immunity was necessary for the employer in *Baker*, a government agency, to lawfully compel its employees to take a lie detector test.[1] While the right against self-incrimination is not necessarily raised in circumstances where an employee is compelled by a private employer to testify, all individuals are protected by the United States Constitution and the Massachusetts Declaration of Rights against self-incrimination in any instance in which testimony is compelled by the government. See *Commonwealth* v. *McGrail*, 419 Mass. 774, 777 (1995); *Commonwealth* v. *Dormady*, 423 Mass. 190, 193-194 (1996). If the plaintiff was coerced, even by Kelley, to take the lie detector test, then absent an adequate grant of immunity its administration by the police was not "otherwise permitted." Ruling differently allows a law enforcement officer to use this statute to compel testimony in violation of an individual's constitutional rights, simply by involving that individual's employer. This is precisely what appears to have happened here.

The defendants argue that no constitutional rights are implicated because the plaintiff took the test voluntarily, not as a result of police pressure. "In determining whether a statement was made voluntarily, in compliance with due process of law, we examine . . . the totality of the circumstances surrounding the making of the statement," including "all of the relevant

---

[1] In *Baker*, the court found that "use immunity" offered adequate protection of the officers' right against self-incrimination under the Fifth Amendment to the United States Constitution, but did address the issue under art. 12 of the Massachusetts Declaration of Rights. See *id.* at 331 & n.14. However, "the type of immunity that provides the requisite degree of protection for art. 12 purposes is the so-called transactional immunity, which provides a greater protection than the 'use and derivative use immunity' required by the Fifth Amendment." *Commonwealth* v. *Burgess*, 426 Mass. 206, 218 (1997) (citation omitted).

circumstances surrounding the interrogation and the individual characteristics and conduct of the defendant." *Commonwealth* v. *Selby*, 420 Mass. 656, 662-663 (1995). *Commonwealth* v. *James*, 427 Mass. 312, 315 (1998). The plaintiff furnished testimony at his deposition indicating threats and pressure exerted by Minichielli and Kelley to obtain his consent to the test. The burden is on the defendants, therefore, to demonstrate that there is no genuine issue of material fact and that as a matter of law the plaintiff freely consented to take the test. For his part, Minichielli points out that the plaintiff testified that Minichielli only suggested that he take the test, that he never told him that he had no choice. Consequently, there was a genuine issue of material fact as to whether the plaintiff's cooperation was compelled. As there is no question that the plaintiff was not offered adequate immunity from criminal prosecution,[2] viewing the materials in a light most favorable to the plaintiff, see *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 438 (1995), a fact finder could determine that the administration of the test was proscribed by the statute and that the plaintiff had a right to refuse. I would permit both of the plaintiff's claims to proceed to trial.

---

[2]See *Commonwealth* vs. *Dalrymple*, 428 Mass. 1014, 1016 (1998) (G. L. c. 233, §§ 20C-20I, " 'covers the entire subject of immunity' for witnesses in the specified proceedings"). See also *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229 (1995); *Commonwealth* v. *Dormady*, 423 Mass. 190 (1996).