Brassard, J.
This matter is before this court on plaintiffs’ motion for preliminary injunction pursuant to Mass.R.Civ.P. 65(b). Specifically, plaintiffs have brought a complaint for declaratory relief under G.L.c. 231 A, §1 seeking a declaration as to whether letters from the Middlesex County District Attorney’s Office (“DA”) and the Attorney General’s Office (“AG”) are sufficient to confer transactional immunity on Joseph F. Frawley, Jr. (“Frawley”) concerning possible criminal proceedings arising out of questioning by the Cambridge Police Department (“CPD”). Plaintiffs seek a preliminary injunction to stay the interview until this court can determine whether the proffered grant of immunity by the DA’s office and the AG’s office is effective. On November 13, 2001, the parties agreed before this court that the interview scheduled for November 15, 2001, would be postponed until this court rendered a decision. For the following reasons, plaintiffs’ motion for a preliminary injunction is ALLOWED.
BACKGROUND
The essential facts in this care are undisputed. In the Spring of 2001, defendant Ronnie Watson (“Watson” or “the Police Commissioner”) commanded Frawley to appear at an interview to be conducted by a member of the CPD’s “Quality Control Section.” The “Quality Control Section" is responsible for investigating allegations of wrongdoing on the part of sworn officers of the CPD. Specifically, the interview pertained to Frawley’s use of paid sick leave and whether on some of the days on which Frawley reported that *142 he was ill to the CPD, he was actually working for another employer.
On May 25, 2001, Frawley appeared with an attorney at the scheduled interview and was told by the person conducting the interview that the subject matter of the interview had criminal implications. As a result, Frawley invoked his constitutional protections against self-incrimination and declined to answer questions at the interview.
On or about August 20, 2001, Watson notified Frawley via letter that the CPD had “sought and obtained from the Middlesex District Attorney and the Attorney General for the Commonwealth assurance that they will forego any prosecution of you for any transaction, thing or matter which you are compelled to testify about during the course of this investigation.” In addition, Watson again commanded Frawley to appear on September 4, 2001, for an interview regarding the use of his sick time.
On September 4, 2001, at the interview, Frawley again invoked his privileges against self-incrimination and refused to answer certain questions asked by the representative of the “Quality Control Section.” The interview was terminated at that point. Subsequently, Frawley’s attorney contacted Watson’s counsel and represented to him that the proffered grant of immunity was legally inadequate and suggested that the CPD obtain a judicial grant of immunity pursuant to the procedures enumerated in G.L.c. 233, §20E.
The Police Commissioner takes the position that the letters from the DA and AG are sufficient to confer transactional immunity on Frawley and as such, Frawley must answer the questions pertaining to his sick leave. On October 24, 2001, Watson again commanded Frawley to appear on November 15, 2001, to be interviewed. That interview has been stayed by agreement of the parties pending a decision by this court.
DISCUSSION
I. Standard of Review
In order to succeed in an action for a preliminary injunction, a plaintiff has the burden of proving: (1) a likelihood of success on the merits at trial; (2) that irreparable harm will result from the denial of the injunction; and (3) that the plaintiffs irreparable harm outweighs any harm the opposing party would suffer if the injunction were granted. In addition, when a party seeks to enjoin governmental action, the court also considers whether the relief sought will have negative impacts on the public. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001); Packaging Industry Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
II. Success on the Merits
This court recognizes that the issue presented in this case regarding transactional immunity is complex and has not been completely addressed and settled by either the Massachusetts Legislature or the Massachusetts appellate courts. This court must therefore determine whether the proffered grant of immunity by the DA’s office and the AG’s office is sufficient.
A. Requirement of Transactional Immunity
In Carney v. Springfield, 403 Mass. 604, 610 (1988), the Supreme Judicial Court held that an employer may compel an employee under threat of discharge to answer questions reasonably related to job performance. The Court recognized that the answers to such questions may have criminal implications and may lead to a subsequent criminal proceeding against the employee. Id. at 610. The Court followed a holding of the United States Supreme Court and held that a public employee, faced with the prospect of termination (if he does not answer the questions) and prosecution (if he does answer the questions), must be afforded immunity to supplant the privileges against self-incrimination. Id. at 610, citing Lefkowitz v. Turley, 414 U.S. 70, 85 (1973). In Massachusetts, Article 12 of the Declaration of Rights mandates transactional immunity to supplant the privilege against self-incrimination. Id. at 610. The parties in this case agree that Carney requires the offering of transactional immunity to Frawley as he is faced with a choice between loss of employment and criminal prosecution.[3] The crux of the issue before this court is the procedure for obtaining transactional immunity in the circumstances of this case.
B. Review of Applicable Case Law and the Immunity Statute
In Baglioni v. Chief of Police of Salem, 421 Mass. 229 (1995), the Supreme Judicial Court engaged in a detailed discussion of transactional immunity in circumstances similar to those at issue in this case.[4] In Baglioni, the Court assumed, but declined to decide, that a district attorney has authority to grant immunity in such circumstances. Specifically, the Court stated that:
We shall assume, without deciding, that a district attorney has authority to grant immunity to a person with respect to events as to which that person is obliged to make statements at the risk of loss of employment. The district attorney’s authority extends, however, only to the limits of his district. Immunity from prosecution by a district attorney in another district, by the Attorney General, or by a United States attorney does not automatically flow from such a grant of immunity.
Id. at 233.
In addition, the Court noted that one in the position of Frawley here “must be assured that the purported immunity (a) is effective Statewide and (b) protects against use of any statements in the prosecution of any Federal crime.” Id. at 233-34.
With respect to the procedure for obtaining this immunity, the Supreme Judicial Court stated that:
*143 Adequate assurances against prosecution within the Commonwealth might be obtained by following the procedure for notice to other prosecutors in our immunity statute, which could lead to assent to the grant of immunity. See G.L.c. 233, §30E (1994 ed.). Without at least the Attorney General’s assent, the district attorney’s grant of immunity standing alone cannot have Statewide effect.
Id. at 233-34 n.6.
Subsequently, in 1996, in the case of Commonwealth v. Dormady, 423 Mass. 190, 197 (1996), the Supreme Judicial Court stated:
We have not decided the exact limits of a district attorney’s authority to grant transactional immunity absent reasonable reliance on a stipulation made by a representative of the district attorney’s office. We need not do so today, and note only that the question is one appropriate for a legislative answer.
In Dormady, then, the Supreme Judicial Court declined to rule on the exact limits of a district attorney’s authority to grant transactional immunity in cases similar to the one at bar.
In 1998[5] in the case of Commonwealth v. Dalrymple, 428 Mass. 1014, 1016 (1998), the Supreme Judicial Court revisited this issue in determining whether a prosecutor had inherent authority to grant immunity. Specifically, in Dalrymple, the prosecution sought immunity for a witness in a murder case who invoked her constitutional privilege against self-incrimination. The Commonwealth sought the witness’s testimony pursuant to Mass.R.Crim.P. 35 in that the witness was on the verge of marrying the defendant which would have allowed her to assert the testimonial spousal privilege pursuant to G.L.c. 233, §20. The Court held that:
The Legislature now has provided an answer in the context of criminal proceedings in the specified courts. Consistent with our view of the immunity statute prior to the amendments, we adhere to our view that the statute “covers the entire subject of immunity” for witnesses in the specified proceedings. The Legislature did not authorize the Attorney General or district attorneys to grant immunity in such criminal proceedings, and we decline to recognize such authority in criminal proceedings on some basis apart from the statute. We need not consider whether there may be some proceeding in a context not addressed in the immunity statute, in which a district attorney or a trial judge would seek to exercise power to grant immunity, for the statutory procedures govern how [the] [witness] may be granted immunity in this case.
Dalrymple holds that the Massachusetts Legislature has fully addressed the procedures for obtaining immunity for investigations before a grand jury and for criminal proceedings in the Superior Court, the Appeals Court, and the Supreme Judicial Court. In the instant case, there is no investigation before a grand jury and there exists no criminal proceedings in any of the three courts mentioned in the immunity statute. The immunity statute, as most recently amended, does not address other proceedings in which a grant of immunity may be sought.
C. Application of Baglioni
In the absence of controlling case law or an applicable statute, this court concludes that the Supreme Judicial Court would continue to apply the principles the Court set forth in Baglioni on the assumption that a “district attorney has authority to grant immunity to a person with respect to events as to which that person is obliged to makes statements at the risk of loss of employment.” Baglioni, supra, at 233. In Baglioni, two Salem police officers were ordered to undergo a polygraph examination after accusations against them concerning damage to another officer’s locker and the filing of a false report. Baglioni, supra, at 229-30. The Salem Police Department had obtained a purported grant of immunity from one district attorney’s office. Baglioni, supra, at 230. Thus, the Court addressed the issue of whether a proffered grant of immunity by a district attorney, pertaining specifically to testimony at an administrative hearing, was valid. Again, assuming that the district attorney had authority to grant immunity in such circumstances, the Court in Baglioni held that, ”[o]ne who persists in the assertion that the promise does not fully protect his or her rights against self-incrimination must be assured that the purported immunity (a) is effective Statewide and (b) protects against use of any statements in the prosecution of any Federal crime.” Baglioni, supra, at 233-34.
The Court’s decision in Baglioni suggests that in order to grant immunity in an administrative context and in the absence of a grand jury or criminal proceeding, a district attorney must notify “other prosecutors” and thereby effectively comply with the procedure set forth in the statute. G.L.c. 233, §20E. Notice to and the assent of the district attorney in every county within the Commonwealth as well as that of the Attorney General is required by statute. G.L.c. 233, §20E.[6] The Court also noted that ”[w]ithout at least the Attorney General’s assent, the district attorney’s grant of immunity standing alone cannot have Statewide effect.” Baglioni, supra, at 233-34 n.6. This language might reasonably be construed, as it apparently was by the Police Commissioner here, to mean that only the assent of the Attorney General and the requesting district attorney is required. This court concludes that the better reading of this language is that the assent • of all district attorneys is necessary, as well as that of the Attorney General for “Statewide effect.” The latter reading is more consistent with the statute and imposes only a minimal, and familiar, burden on the requesting district attorney.
*144 Because these procedures have not been followed in this case, Frawley has demonstrated a likelihood of success on the merits.[7]
D. Federal Immunity
While the record in the instant case is unclear as to whether Frawley may face a federal prosecution based on any testimony rendered at a CPD “Quality Control Section” hearing, the possibility for such a prosecution does exist. In Kastigar v. United States, 406 U.S. 441, 453-54 (1971), the United States Supreme Court held that an employee faced with a choice between criminal prosecution and the loss of employment, must be offered use and derivative use immunity.
In Baglioni, the Supreme Judicial Court pointed out that, “[a] witness who has received complete state immunity will be extended Federal use or derivative use immunity as to statements only if there is unavoidable coercion to testify.” Baglioni, supra, at 234, citing Garrity v. New Jersey, 385 U.S. 493, 497-98 (1967); see also Murphy v. Waterfront Comm’n of New York Harbor, 378 U.S. 52, 79 (1964) (holding that constitutional exclusionary rule prevents Federal Government from using testimony and its fruits compelled from a witness granted state immunity). Therefore, an effective grant of immunity on the part of the Commonwealth to Frawley will carry with it use and derivative use immunity from federal prosecution.
III. Other Requirements for an Injunction
It is apparent that Frawley faces the risk of criminal prosecution and/or the loss of his job if he is not properly granted immunity. This constitutes an adequate showing of irreparable harm by Frawley. In balancing the harms to both parties, it does not appear that the Police Commissioner will suffer significant harm because of the delay in obtaining immunity for Frawley. The harm to Frawley outweighs any harm to the Police Commissioner. Finally, the public interest will be served by ensuring that Frawley is afforded his proper constitutional rights. See Jaykay-Boston, Inc. v. City of Boston, Civil No. 99-0252 (Suffolk Super. Ct. Feb. 3, 1999) (Hinkle, J.) (holding that there is a strong public interest in protecting constitutional rights).
ORDER
For the foregoing reasons, plaintiffs’ motion for a preliminary injunction is ALLOWED. The Police Commissioner of the City of Cambridge is HEREBY enjoined from conducting the interview pertaining to Joseph F. Frawley’s use of sick leave until such time that the Police Commissioner properly obtains immunity for Joseph F. Frawley from criminal prosecution in accordance with the procedures set forth in G.L.c. 233, §20E(d).
(a) A justice of the supreme judicial court, appeals court or superior court shall, at the request of the attorney general or a district attorney, and after a hearing, issue an order granting immunity to a witness, provided that such justice finds that the investigation or proceeding before the grand jury or the criminal proceeding in the supreme judicial court, appeals court or superior court involves an offense listed in section 20D and that the witness did validly refuse, or is likely to refuse, to answer questions or produce evidence on the grounds that such testimony or such evidence might tend to incriminate him. If such justice so finds, such justice shall order the witness to answer the questions or produce the evidence requested and, if he so orders, such order and the order granting immunity shall be in writing and shall become effective upon the refusal of the witness to answer any question or produce any evidence requested on the basis of his privilege against self-incrimination.
(d) When the attorney general or a district attorney brings such application, he shall, at least three days before the date fixed for hearing on his application, send by certified mail or deliver a copy of such application to the attorney general and to each other district attorney in the commonwealth. The attorney general and any of the district attorneys may waive, eithei orally or in writing, his right to be served with such application. The attorney general and any such district attorney may file an appearance and have the right to be heard at the hearing as herein provided.

 It should be noted that with facts analogous to those in this case, presented in the federal system, the offering of use and derivative use immunity would be required. Kastigar v. United States, 406 U.S. 441, 453-54 (1971).

 Baglioni involved the polygraph examination of two Salem Police Officers concerning malicious damage to another officer’s locker and the filing of a false report. Baglioni, supra, at 229-30.

 The immunity statute, G.L.c. 233, §20E, considered by the Court in Dalrymple, was amended in 1998, and now provides, in pertinent part:

 It should be noted that Baglioni was decided by the Supreme Judicial Court before the 1998 legislative amendments to G.L.c. 223, §20E. While the 1998 amendments to G.L.c. 223, §20E permit the Appeals Court and the Superior Court to grant immunity, the amendments did not change the underlying procedure for obtaining that immunity.

 This court agrees with plaintiffs’ argument that reliance is no longer available to plaintiffs in this case in that plaintiffs have questioned the DA’s and AG's authority to grant transactional immunity simply by writing letters promising not to press criminal charges. The Police Commissioner argues that plaintiffs can rely on the DA’s and AG’s promise should criminal proceedings ensue and is willing to stipulate to plaintiffs’ reliance. As support for his argument, the Police Commissioner points to Commonwealth v. Dormady, 423 Mass. 190, 197 (1996) (holding that reliance on transactional immunity granted by Police Chief and Town Counsel was justified). However, the Police Commissioner’s reliance on this case is misplaced. In Dormady, immunity was offered by the Town’s Police Chief and the Town’s Counsel, and the individual in that case relied upon that grant. As the Court noted in Baglioni, “(w]e reject any possibility that, once the plaintiff officers denied the district attorney’s authority to grant fully effective immunity, they could nevertheless obtain that immunity by relying on the district attorney’s promise. Reliance in such circumstances would not be reasonable." Baglioni, supra, at 232 n.4.