SALVATO J. SILVERIO vs. MUNICIPAL COURT OF THE
CITY OF BOSTON.

Suffolk. February 6, 1969. — April 10, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Police. Civil Service. Grand Jury. Constitutional Law*, Self-incrimination.

Refusal of a police officer, who was not under indictment but had appeared before a grand jury, to answer questions to him later by his superior reasonably designed to inform his superior whether he had failed to report matters which he should have reported, in particular his knowledge of an auto theft ring involving three indicted policemen, and questions as to his conduct before the grand jury in their investigation of such matters, justified his discharge by the appointing authority under G. L. c. 31, § 43, on the ground that "his insubordination and refusal to cooperate with his superior . . . has resulted in his usefulness in . . . police work [becoming] non-existent" [626]; answers by the officer to the questions would not have involved any issues pertaining to secrecy of the grand jury proceedings since none of the questions asked what his testimony had been and merely inquired as to facts known to him, even though he may have testified, or refused to testify, as to the same facts before the grand jury [626].

Refusal by a police officer, who was not under indictment but had appeared before a grand jury, to answer questions to him later by his superior merely inquiring whether he had claimed his privilege against self-incrimination before the grand jury and had refused to answer questions before them pertinent to their current investigation of automobile thefts was not justified on the ground that his answers to his superior's questions might tend to incriminate him, and he was rightfully discharged by the appointing authority under G. L. c. 31, § 43, for breach of duty to answer his superior's questions. [628,630]

Discharge of a police officer by the appointing authority under G. L. c. 31, § 43, by reason of the officer's refusal to answer questions pertinent to his duties by his superior, was not barred because the officer's attorney advised him not to answer certain questions and as to most of them answered for him that he stood mute, where it appeared that there was no merit in the ground asserted for the advice by the attorney and that no constitutional privilege of the officer was involved. [630–631]

PETITION for a writ of certiorari filed in the Supreme Judicial Court for the county of Suffolk on November 15, 1967.

The city of Medford intervened. The case was reserved and reported by *Whittemore, J.*, upon the petition, the return and an agreed statement of facts.

*David Berman (John F. Zamparelli* with him) for the petitioner.

*Howard M. Miller,* Assistant Attorney General, for the respondent.

*Mark E. Gallagher, Jr.,* City Solicitor *(Robert J. Blumsack,* Assistant City Solicitor, with him), for the intervener.

WHITTEMORE, J. The petitioner on March 30, 1965, was discharged as a police officer in the city of Medford by the city manager who was the "appointing authority" (G. L. c. 31, § 43 [a]). On appeal to the Civil Service Commission (c. 31, § 43 [b]), a hearing officer made findings. The Commission, on June 2, 1965, adopted the findings and affirmed the discharge. On petition under c. 31, § 45, the Municipal Court of the City of Boston reviewed the action of the city manager and the Commission to determine "whether . . . upon all the evidence such action was justified,". and on November 7, 1967, entered an order upholding the decision.

This petition for writ of certiorari brings before us the issue whether there was error of law apparent on the record including whether the evidence was sufficient in law. *Sullivan* v. *Municipal Court of the Roxbury Dist.* 322 Mass. 566, 573–574.

The city manager had discharged Silverio for his refusal to answer questions asked of him by his superior, Captain John B. O'Leary. A letter from Captain O'Leary to Silverio had requested Silverio to report to the captain's office on March 17, 1965, at 2 P.M. Silverio came with his attorney. The questions and some of the colloquy are set out in the margin.[1]

---

[1] Before the questioning began Silverio's attorney said, "This was on the front pages of the weekly newspaper and the three parties that were named are all under indictment. It takes it out of the realm of a mere departmental inquiry." In the following excerpt from the transcript where no answer is shown after a question there was a statement by Silverio's attorney to the effect that he stood mute.

In a statement of agreed facts the parties stipulated that the evidence presented to the Commission's hearing officer was sufficient to warrant the findings of fact made by him.

The hearing officer found, inter alia, that the questions involved Silverio's "knowledge of certain persons who it can reasonably be inferred were in some way involved in an auto theft ring involving them and three other Medford policemen who were under indictment." The hearing officer, in effect, ruled that answering the questions would not have been violative of a duty to maintain the secrecy of grand jury proceedings, particularly where the information sought by the superior officer was only as to his conduct before the grand jury. He concluded, "I am cognizant of the fact that . . . [Silverio] was not . . . indicted . . . , but his insubordination and refusal to cooperate with his superior officer in his investigation, has resulted in his usefulness in such a sensitive area as police work non-existent."

O'LEARY: "Now, the purpose is . . . to find out what . . . you can tell me as your superior officer in the discharge of your duties under the Rules and Regulations of the Police Department as to whether things have gone on in this city which you should have reported. You have had a Rule Book given to you?" SILVERIO: "Right." O'LEARY: "Do you know William McGovern of 230 Gaston Street, Medford?" THE ATTORNEY: "You are now under a domain of grand jury proceeding, and as long as the record shows that you are going into that, you do not have any right to go into any grand jury procedure, as you know . . . ." O'LEARY: "Have you ever been to his house in Medford? Have you ever visited his place of business in Charlestown? Have you ever done any business with him? . . . [Five similar unanswered questions about Richard M. Penta and Thomas Howard.] Do you know whether or not they have a criminal record? You were recently summoned to appear before the grand jury, is that true? Did you report to the grand jury at some time? . . . Were you sworn as a witness in the grand jury room? Did you take the witness stand in the grand jury room? Were you asked a question or questions? Did you refuse to testify as to any questions that were asked you? . . . Do the questions that you refused to testify to have anything to do with suspected automobile thefts or receiving stolen property, namely, automobiles, in connection with people known to you, including yourself?" THE ATTORNEY: "He has been instructed not to discuss any grand jury questions with anyone, including counsel, and further stands mute by the advice of counsel." O'LEARY: "Did you claim the Fifth Amendment to any questions asked you before the grand jury?" (The attorney made the same statement.) O'LEARY: "Did you refuse to testify before the grand jury on the grounds that it might incriminate you?" (The attorney made a similar statement.) O'LEARY: "Do you have any information regarding any felony or any person wanted on a felony charge?" SILVERIO: "No." O'LEARY: "Do you have any suspected violations you wish to report?" "Right in here, Mr. Gallagher [the City Solicitor] questions . . . [the attorney's] ability to have the officer answer 'No' and stand mute at the same time. After discussion . . . [the attorney] agreed that he would just stand mute."

1.   Silverio was under a duty by virtue of his office to answer the questions.   This is plain apart from the rules of the Medford Police Department that were in evidence and with which he was familiar.[2]   "Important among the many duties of police officers . . . are the prevention and detection of crime and the apprehension of criminals." *Huntoon* v. *Quincy*, 349 Mass. 9, 14.

2.   Failure to answer, unless required by an over-riding duty, or constitutionally protected, was ground for discharge for the reasons stated by the hearing officer.

3.   Answering the questions would have violated no duty of Silverio to maintain the secrecy of grand jury proceedings.

The only obligation as to secrecy directly imposed by statute is on the grand jurors.   G. L. c. 277, §§ 5, 12 and 13. But even that does not prevent a grand juror from testifying that a certain person had not been a witness before a grand jury.   *Commonwealth* v. *Hill*, 11 Cush. 137, 140.   We do not overlook that in that case the testimony was given at a time when the need for secrecy had ended, but we agree with the respondent that the holding is not placed on that ground.   In the *Hill* case, the court said that grand jurors may not "state, how any member . . . voted or the opinion expressed by their fellows or themselves upon any question before them, nor to disclose the fact that an indictment for a felony has been found against any person, not in custody or under recognizance, nor to state in detail the evidence on which the indictment is founded. . . . [W]e know of no authority which carries the rule of exclusion further, and we can see no ground of policy or sound reason for its extension. . . . It seems to us, therefore, that a

---

[2] "Chapter III.   Sect. 16.   Members and employees of the Department shall communicate promptly to the Commanding Officer all crimes, . . . and all important happenings, complaints, and information of which the Department takes cognizance, which may come to their attention. . . .
"Sect. 92.   Members having information regarding any felony, or any person wanted on a felony charge, shall immediately give all details to their Commanding Officer.
"Sect. 93.   Members shall report all suspected violations coming to their attention, as well as all information they may get about any violation or suspected violation."

member of a grand jury may testify to any fact, otherwise competent, which does not violate the restrictions above stated."

We assume that persons other than grand jurors making disclosure of facts within the restrictions stated in the *Hill* case, could, in some circumstances, be held in contempt for interfering with the grand jury as a constituent part of the court. See *Commonwealth* v. *McNary*, 246 Mass. 46, 50–51. But in *Commonwealth* v. *Geagan*, 339 Mass. 487, 497–498, we held that disclosure by State and Federal officials of what witnesses had testified to or would testify before the grand jury was not violative of the secrecy of the grand jury room and not ground for abatement.

Silverio's refusals to answer were not justified because of the possibility that he would be in contempt for breaking the secrecy of the grand jury. None of the questions asked for disclosure of any of the secrets of the grand jury room. Silverio's brief misstates the purport of the questions. He was not asked to invade the "secrecy as to his testimony" and the cases from other jurisdictions holding that he may not do so are beside the point. We note *New Hampshire Fire Ins. Co.* v. *Healey*, 151 Mass. 537, 538, holding that the district attorney might testify as to a witness's testimony before the grand jury because the need for secrecy had at that time passed. The negative implication of that case does not bear on police department inquiry as to whether an officer had been before the grand jury, had testified and had refused to testify because of his Fifth Amendment privilege. There was no implication of intention to ask what Silverio's testimony had been.

We assume that the questions that asked Silverio as to his acquaintance and association with three named persons, and their criminal records, may have been questions about facts to which he had testified or refused to testify before the grand jury. But that circumstance did not put a lock on Silverio's mind and tongue to bar his disclosure of the same facts to anyone else. Silverio's recital of those facts as facts known to him would in no sense have been a dis-

closure of grand jury proceedings. *Commonwealth* v. *Doherty*, 353 Mass. 197, 210–211. (That a witness had testified before the grand jury would not justify his declining to talk with defence counsel.)

4. Silverio's refusal to answer may not be justified on the ground that his answers might have tended to incriminate him. We assume that this justification may now be asserted even though it was not expressed when the questions were put. *Commonwealth* v. *Prince*, 313 Mass. 223, 229–231, affd. 321 U. S. 158.[3]

The Supreme Court of the United States in *Gardner* v. *Broderick*, 392 U. S. 273, 278, held that it was improper to discharge a police officer for refusal to waive immunity following his being told that he would be discharged if he did not do so. The court also held, however, that if the policeman "had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution . . . the privilege against self-incrimination would not have been a bar to his dismissal."

In *Uniformed Sanitation Men Assn. Inc.* v. *Commissioner of Sanitation of New York*, 392 U. S. 280, 284–285, fifteen employees had been told that if they refused to testify on the ground of self-incrimination they would be discharged. Twelve had asserted the privilege and had been discharged. Three had answered the questions, denied the charges against them and had been suspended. Later they had refused to sign waivers of immunity before the grand jury and had been discharged on that ground. In reversing the decision below sustaining the discharges the court noted that New York "was seeking not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which . . . could be used to prosecute them crimin-

---

[3] It appears from pp. 16–17 and 21 of the record in the *Prince* case that the defendant did not claim the privilege when she refused to answer questions of the school attendance officer.

ally." The court noted, however (p. 285), the "petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights." Compare *Spevack* v. *Klein,* 385 U.S. 511; *Garrity* v. *New Jersey,* 385 U.S. 493.

Thus an employee knows that if he fails to divulge information pertinent to the issue of his use or abuse of his public trust he may lose his job. The fact of employment poses the continuing choice of whether to divulge such information. The Constitution of the United States, however, as we understand its construction, does not require that a public employer continue to employ in a position of public trust an employee who declines or renders himself unable to perform the duties of his position on the ground of the constitutional protection against self-incrimination. No threat or pressure of his superior coerces his choice. His choice is his own, even though it may be affected by his expectation that his superiors will perform their own public duties in the light of their appraisal of his conduct.

We agree with Mr. Justice Harlan in his concurrence in the *Gardner* and *Uniformed Sanitation* cases (392 U.S. at 285) that there is "in these opinions a procedural formula whereby . . . public officials may now be discharged . . . for refusing to divulge to appropriate authority information pertinent to the faithful performance of their |offices. . . ."

Silverio contends that he was discharged because he failed to disclose whether he had claimed his Fifth Amendment rights before the grand jury and that that was, in effect, discharge for claiming these rights. We deem his discharge to have been on the broad ground that he failed to answer any questions concerning his conduct as a police officer. The inquiry was in two parts: (1) questions reasonably designed to inform his superior whether he had failed to report matters which he should have reported, in particular, his knowledge of an auto theft ring involving three other policemen; and (2) questions as to his conduct before the

grand jury in their investigation of the matter. The ground of discharge was his complete failure to perform his duty in this interrogation.

In any case, however, Silverio could have been discharged for his refusal to say whether before the grand jury he had claimed his privilege against self-incrimination. The essence of the inquiry was whether he had refused to answer questions about the theft of automobiles. The implications of this inquiry by his superior officer are no greater than those in a direct question as to whether he had knowledge of, or connection with, persons who had stolen automobiles. We assume Silverio had a right to refuse to answer such questions on constitutional grounds. We assume also that he could not have been discharged for claiming the privilege. But this is not that case. Whether Silverio had claimed his privilege against self-incrimination in respect of such a matter was the important concern of his superiors. Certainly, a police officer who has claimed or claims the privilege as to a matter under current investigation could be deemed unfit to work in any aspect of his job related to that or to a similar investigation. His superiors, therefore, had a right to ask if the claim had been made and the obligation of Silverio's job was to answer.

We rule that, notwithstanding the constitutional protection, Silverio was rightfully discharged for breach of duty. This occurred in the course of an official inquiry in which no testimony was coerced by threat of discharge and no request for waiver of immunity was made. He was not discharged because he claimed his right against self-incrimination as in the *Gardner* case; nor was incriminating testimony, obtained through threat of discharge, used against him as in the *Garrity* case.

5. Discharge of Silverio was not barred because his attorney advised him not to answer certain questions and as to most of them answered for him that he stood mute.

The only expressed ground for the advice as stated by the attorney was, "[Y]ou [Captain O'Leary] do not have any right to go into any grand jury procedure." There was no

claim that answering was barred by law, or by an effective policy such that Silverio would risk punishment if he answered. There is no finding that Silverio relied in good faith on advice that he was under an obligation not to answer because it would be illegal or improper to do so. Nothing in the record required such a finding. The Commission and the judge could conclude that the attorney had told Silverio that his appearance before the grand jury gave legal ground for refusing to answer and that the attorney would speak for him in asserting that ground and that, in fact, the refusal was otherwise based.[4] In such circumstances, Silverio's conduct was at the risk that there was nothing in the ground asserted and that no constitutional privilege would protect him. See *Sinclair* v. *United States,* 279 U. S. 263, 299 (conviction for failure to respond to questions of Congressional Committee). The court said, "There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel. The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. . . . His mistaken view of the law is no defense."

6. No error being shown, an order shall enter in the county court dismissing the petition.

*So ordered.*

---

[4] The judge was not required to come to a different conclusion by the testimony of the attorney in the Municipal Court, not in the certiorari record, but set out in an appendix to Silverio's reply brief, that the attorney, based on his understanding of the law, had told Silverio he could not answer as to anything pertaining to the Grand Jury.