## MASSACHUSETTS PAROLE BOARD *VS.* CIVIL SERVICE COMMISSION & another.[1]

No. 98-P-148.

Suffolk. June 8, 1999. - September 17, 1999.

Present: KASS, PORADA, & GELINAS, JJ.

*Civil Service,* Termination of employment. *Constitutional Law,* Public employment, Self-incrimination. *Public Employment,* Termination. *Due Process of Law,* Notice. *Notice,* Termination of employment.

The Parole Board's letter to a parole officer requiring his presence at an investigatory administrative interview relating to the officer's job performance was sufficient to give notice that a refusal to appear could result in dismissal, and the officer's refusal to appear was a proper basis for the board to discharge him. [763-765]

This court concluded that a public employee's reliance on his attorney's erroneous advice that the employee had a constitutional right not to appear and answer questions at an investigatory administrative interview regarding the employee's job performance did not bar the employee's discharge for failure to appear and answer questions. [765-766]

CIVIL ACTION commenced in the Superior Court Department on January 8, 1996.

The case was heard by *Carol S. Ball,* J.

*Rosemary S. Gale,* Assistant Attorney General, for the plaintiff.

*Gregory S. Gilman* for Philip Maurice.

PORADA, J. The Massachusetts Parole Board (board) appeals from a judgment of the Superior Court affirming a decision of the Civil Service Commission (commission) reinstating a parole officer (Maurice) who had been discharged by the board. The issues presented are whether the board's letter to Maurice to appear at an investigatory hearing was sufficient to give him notice that his refusal to appear could result in his dismissal and whether Maurice's good faith reliance on the advice of his at-

---

[1]Philip Maurice.

torney not to appear at the hearing barred the board from discharging him. We conclude that Maurice received adequate notice and that Maurice's good faith reliance on the advice of his attorney did not bar his discharge. We, therefore, reverse the judgment and remand the case to the Superior Court for the entry of an order reversing the action of the commission.

*The facts.* On or about November 2, 1988, the chairman of the board received information that a female probationer had alleged at a probation revocation hearing that Maurice had secured permission for her absence from a residential counseling program she had been ordered to attend, and that, on one occasion, Maurice had allegedly brought her to a secluded area and assaulted her. The chairman was also informed that Maurice had allegedly misrepresented certain facts to a probation officer about his conduct relating to this probationer.

As a result, the chairman sent Maurice a letter ordering him to appear on November 4, 1988, at an investigative interview relating to his having "to appear as a witness on behalf of [the probationer] in the matter of her probation surrender hearing . . . ." In that letter, the chairman advised Maurice that "[he had] the right to remain silent, although [he could] be subject to disciplinary action by the Parole Board in the form of a discharge for [his] failure to answer material and relevant questions relating to the performance of [his] duties as an employee of the Commonwealth of Massachusetts."[2]

Maurice did not appear at the interview. Maurice's attorney, however, called the board to inform them that Maurice would not appear at his direction. The attorney also wrote a letter to

---

[2]The full text of the letter reads as follows: "I recently became aware that on or about October 31, 1988, you were scheduled to appear as a witness on behalf of [the probationer], in the matter of her probation surrender hearing at Cambridge District Court.

"As your precise involvement in this matter is unclear, I require your presence, participation, and cooperation in an interview to be conducted at the Parole Board's Central Office at 27-43 Wormwood Street, Boston, Massachusetts, on November 4, 1988 at 10 A.M.

"The interview will be solely administrative in nature. Its purpose will be to discover facts and to offer you an opportunity to explain events relating to the performance of duty. The interview will not seek a final determination or adjudication as to whether you ought to be removed from your job, but rather will be investigative in nature.

"Additionally, please be advised that you have all the rights and privileges guaranteed by the laws of the Commonwealth of Massachusetts and the Constitution of this State and of the United States, including the right to be

the board outlining the following reasons for Maurice's refusal to appear: (1) the board had no authority to conduct an investigatory interview; (2) the board's failure to adopt procedures for the conduct of such an interview violated Maurice's right to due process under Federal and State constitutions; (3) the board gave less than twenty-four hour notice of the hearing to Maurice; (4) the board had no authority to grant use immunity to Maurice; (5) the board had no authority to advise Maurice that he could be prosecuted for making a false statement; and (6) Maurice's refusal to answer questions under the circumstances did not constitute insubordination.

As a result of Maurice's refusal to appear at the interview, the commission held a discharge hearing at which Maurice was present with counsel. Following this hearing, the board discharged Maurice for his failure to appear and cooperate with the investigatory interview in defiance of the chairman's order.

Maurice appealed the board's dismissal to the commission. An administrative magistrate found that the board did not have just cause to terminate Maurice because his refusal to appear was not meant to defy or undermine the chairman's authority, but was "a good faith attempt to assert his constitutional rights." The commission adopted the findings of fact contained in the magistrate's decision. It then ruled, based on its interpretation of *Carney* v. *Springfield*, 403 Mass. 604 (1988), that the board did not have just cause to terminate Maurice because he was within his constitutional rights in declining to participate in the investigatory interview absent a grant of transactional immunity pursuant to article 12 of the Declaration of Rights of the Massachusetts Constitution. The board appealed the decision to the Superior Court.

---

represented by counsel, at this inquiry.

"I further advise you that the answers you may give to the questions propounded to you at this interview, or any information or evidence which is gained by reason of your answers, *may not be used against you in a criminal proceeding except that you may be subject to criminal prosecution for any false answer* that you may give under any applicable law of either the Commonwealth or the United States of America.

"You have the right to remain silent, although you may be subject to disciplinary action by the Parole Board in the form of a discharge for your failure to answer material and relevant questions relating to the performance of your duties as an employee of the Commonwealth of Massachusetts.

"No rescheduling of the interview will be effective unless approved in writing by me." (Emphasis in original.)

A Superior Court judge ruled that the commission erred in concluding that Maurice had the right, by reason of his privilege against self-incrimination, not only to refuse to answer specific questions, but also to refuse to appear. The judge reasoned that, where the employee fails to appear and consider the questions propounded to him, there is no basis on which to decide whether his claim of privilege is legitimate.

Notwithstanding this ruling, the judge did not reverse the decision, but remanded the case to the commission to determine whether Maurice's discharge was proper in light of the magistrate's finding that his refusal to appear was not an act of defiance, but an act based on his good faith reliance on his attorney's advice that he had a constitutional privilege to refuse to appear.

Upon remand, the commission affirmed its prior decision to reinstate Maurice on the grounds that Maurice's good faith reliance on his attorney's advice that he had a constitutional right not to appear, coupled with the board's failure to inform him that his failure to appear could result in a discharge, did not warrant his dismissal. The commission also noted that had "[Maurice] been informed of the consequences of a failure to appear and then voluntarily elected not to present himself at the required place and time," the board would have had just cause to terminate him. The board appealed this decision to the Superior Court. A different Superior Court judge affirmed the commission's decision.

*Discussion.* 1. *Notice.* The board argues that the notice to appear at the investigatory interview was sufficient to advise Maurice of the disciplinary consequences of noncompliance as it informed him that if he did not answer material and relevant questions pertaining to the performance of his duty, he could be discharged. The judge noted in her decision that if you do not appear, you cannot answer. Nevertheless, relying on the *Carney* decision, she concluded that the notice was deficient because it failed to inform Maurice that he could be discharged for his refusal to appear and did not contain an offer of transactional immunity.[3]

We think the judge's reliance on the *Carney* decision is misplaced. In *Carney*, the court held that a public employer

---

[3] Transactional immunity is that which grants "immunity from prosecution for offense to which compelled testimony relates." *Kastigar* v. *United States*, 406 U.S. 441, 443 (1972). See Propriety, Under State Constitutional Provi-

who, during an investigation, compels answers from an employee "*at the time of the interrogation*" must specify the precise repercussions that will result if the employee fails to respond (emphasis supplied). *Carney* v. *Springfield,* 403 Mass. at 609. Here, no interrogation had yet occurred and, unlike the employee in the *Carney* case, Maurice had not been furnished with a list of questions to which his response was required.

The letter to Maurice specified that the area of inquiry the board would pursue concerned Maurice's precise involvement in the matter of the female probationer's surrender hearing. It is not self-evident from that letter that the board would have asked Maurice any questions that would have triggered his right to invoke the privilege against self-incrimination, which we assume is the constitutional right being asserted by Maurice.[4] Certainly, the board would have had the right to ask him questions relating to his alleged role in securing the probationer's absence from a counseling program and Maurice would not have had any right to refuse to answer those questions. *Broderick* v. *Police Comm'r of Boston,* 368 Mass. 33, 37-38 (1975), cert. denied, 423 U.S. 1048 (1976); *Patch* v. *Mayor of Revere,* 397 Mass. 454, 455 (1986).

With respect to any questions about the probationer's allegation of assault, Maurice could have invoked his privilege against self-incrimination. As to these questions, the board could not have compelled Maurice's answers under a threat of discharge absent a grant of transactional immunity, nor could the board have discharged him for refusing to waive his immunity. *Carney* v. *Springfield,* 403 Mass. at 610-611; *Commonwealth* v. *Dormady,* 423 Mass. 190, 193-194 (1996). There is a real difference between refusing to answer a specific question during a proceeding and a blanket refusal to answer all questions before a proceeding has advanced to a level of specificity in which the competing concerns of the employer and the employee can be addressed in a meaningful way. *Gulden* v. *McCorkle,* 680 F.2d 1070, 1076 (5th Cir. 1982), cert. denied, 459 U.S. 1206 (1983).

In sum, we do not construe the *Carney* decision to permit an employee to circumvent an investigatory proceeding by claim-

---

sions, of Granting Use or Transactional Immunity for Compelled Incriminating Testimony — Post-Kastigar Cases, 29 A.L.R. 5th 1, 13 (1995).

[4] In his letter to the chairman spelling out the reasons for Maurice's failure to appear, Maurice's attorney only claimed that the interview would violate Maurice's right to due process under the Federal and State Constitutions.

ing generalized constitutional rights prior to the time the inquiry has advanced to a level of specificity where the claim can be properly evaluated in a particularized context. See *Murphy* v. *Commonwealth*, 354 Mass. 81, 83-84 (1968). Further, because the inquiry had not yet advanced to a level of specificity in which the competing concerns of immunity could be evaluated, the board had no obligation as a matter of law to tender an offer of transactional immunity to the employee.[5]

Contrary to the commission's decision, we conclude that the notice received by Maurice was sufficient as a matter of law to advise him of the consequences of his refusal to appear. In the letter from the chairman to Maurice, the chairman informed him that he could "be subject to disciplinary action by the Parole Board in the form of a discharge for [his] failure to answer material and relevant questions relating to the performance of [his] duties as an employee of the Commonwealth of Massachusetts." In our opinion, the failure to appear is tantamount to a refusal to answer.

2. *Reliance upon the advice of his attorney.* Relying upon *Silverio* v. *Municipal Ct. of Boston*, 355 Mass. 623, 630-631, cert. denied, 396 U.S. 878 (1969), the board argues that Maurice's reliance on the erroneous advice of his attorney that he had a constitutional right not to appear and answer questions did not bar his discharge. In *Silverio*, the court concluded that the discharge of a public employee was not barred because the public employee relied upon the erroneous advice of his attorney that he had a legal right not to answer certain questions. The court noted, however, that there was no finding that the employee relied in good faith on the advice of his attorney. In this case, the board argues that it does not matter whether Maurice acted in good faith because, just like Silverio, he defied his

---

[5]The board would not have had any authority to do so. At the time of the interview, the Attorney General or the district attorney would ostensibly have had the power to do so. *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229, 233 (1995). But see *Commonwealth* v. *Dalrymple*, 428 Mass. 1014, 1015-1016 (1998). See also G. L. c. 233, §§ 20C-20H, as amended by St. 1988, c. 188, §§ 1-10.

Arguably, even if we were to assume that the board was required to offer transactional immunity to a public employee in the circumstances described here, the board may not have been required to do so in this case because the board did not have the benefit of the *Carney* decision at the time the notice was given. See *Commonwealth* v. *Kerr*, 409 Mass. 11, 14-15 (1990). See also 29 A.L.R. 5th at 17 n.16.

superior in refusing to appear and to answer questions about his job performance on the erroneous advice of his attorney. The board contends that, in doing so, he ran the risk that there was nothing in the ground asserted and that no constitutional privilege would protect him.

To rule that good faith reliance upon the erroneous advice of one's attorney should excuse noncompliance with an order of a superior appears to run counter to a legal principle that, ordinarily, a person is held accountable for the conclusions of his attorney to the extent that one accedes to those conclusions or permits counsel to act in one's stead. *Link* v. *Wabash R.R.*, 370 U.S. 626, 633-634 (1962). See *Weston* v. *United States Dept. of Hous. & Urban Dev.*, 724 F.2d 943, 951 (Fed. Cir. 1983). To permit an employee to mitigate his penalty because he relied in good faith upon the advice of counsel that proved erroneous would seriously jeopardize efficient internal surveillance and quality control by government agencies and would place any employee who hires a lawyer at a distinct advantage over one who does not. *Id.* Accordingly, we decide that Maurice's good faith reliance on the advice of his attorney did not preclude his discharge.

The judgment of the Superior Court is reversed and a new judgment shall enter reversing the decision of the Civil Service Commission.

*So ordered.*