Horgan, J.
This matter involves appeals and cross-appeals taken in two consolidated cases. The plaintiffs in both cases are partners in the accounting firm of Starr, Finer, Starr, LLP. (hereinafter “Starr Finer”). In Case No. 261639, Starr Finer seeks fees in the amount of $4,342.50 it claims is owed as a result of work it performed in connection with litigation involving the defendant Security Mills Realty Trust (hereinafter the ‘Trust”), a business trust, and its trustees, defendants Paul B. Ruben-stein (hereinafter “Rubenstein”), John B. Rubenstein and Bennett B. Rubenstein. This case will hereafter be referred to as the ‘Trust Case.” The conflict that is the subject of the Trust Case relates to another lawsuit that began in 1989 against the Trust and the trustees by a business entity that purchased an old textile mill building from the Trust in 1985. The buyers claimed that underground storage tanks on the mill property had leaked and contaminated the soil in violation of G.L.c. 21E. The trustees settled this litigation in 1991 and then commenced a declaratory action against five insurance companies that had issued polices to the Trust over the years, seeking a judgment that required the insurance companies to provide coverage for the G.L.c. 21E lawsuit and to reimburse them for the costs of defense and settlement. Attorneys for the Trust, defendants Rackemann, Sawyer and Brewster, P.C. (hereinafter the “law firm”), contacted Starr Finer, which had performed accounting services for the Trust over the years, and asked it to locate in their files and present at trial copies of insurance policies to prove that the Trust had insurance coverage. Starr Finer located the polices in its files and generated a bill for this work that was dated February 27, 1993. In December, 1993, Sherman Starr, a partner of Starr Finer, testified at trial in a “keeper of the records” capacity. Starr Finer then sent an invoice dated January 1,1994, to the law firm for the time spent locating the files and testifying. The Trust failed to pay either invoice and Starr Finer commenced this lawsuit on April 15,1999, against the Trust, Trustees and the law firm.
In Case No. 261459, Starr Finer claims that Rubenstein and his wife owe fees in the amount of $2,725.00 relating to work performed on a personal matter involving the Internal Revenue Service. This case will be hereinafter referred to as the “IRS Case.” In preparing the Rubensteins’ 1991 tax return, Starr Finer claimed deductions based on the amounts paid by Rubenstein to settle and defend the G.Lc. 21E litigation. In November, 1992, the IRS notified the Rubensteins that it wanted them to substantiate the amount of these deductions. Rubenstein then contacted Starr Finer for assistance with the IRS. Sherman Starr sent the Rubensteins an “engagement letter,” which Rubenstein countersigned and which stated that Starr Finer was engaged “to represent [the Rubensteins] during [their] audit by the Internal Revenue Service for the year ended December 31,1991.” Myron Greenside (hereinafter “Greenside”) of Starr Finer then contacted the IRS on behalf of the Rubensteins and presented cancelled checks to substantiate the deductions. On January 4,1993, the IRS sent Greenside a letter indicating that the deductions would not be allowed and inviting a response from the Rubensteins. Shortly thereafter, Rubenstein contacted Greenside and said that his son, Attorney Alan Rubenstein,[1] would be handling the audit from that point on. Alan Rubenstein drafted a letter to the IRS that he first sent to Greenside for review and editing. A final draft of the letter was sent to the IRS on January 28,1993. On February 27,1993, Starr Finer sent the Rubensteins a bill for the preparation of their 1991 tax return as well as for work performed in relation to the IRS audit. Two other invoices were sent in January 1,1994 and July 2,1994 for other work Starr Finer claimed was performed in relation to the IRS audit. The Rubensteins paid that portion of the bills that related to the tax return preparation and disputed the amount due for work performed concerning the IRS audit. Starr Finer commenced the IRS Case on April 8,1999 to collect the unpaid amount.
*126 The cases were initially scheduled for trial on February 12, 2002. On February 8,2002, Starr Finer brought a motion in limine in connection with the IRS Case to preclude the anticipated admission of Rubenstein’s deposition testimony in lieu of his live testimony. Rubenstein’s counsel had initiated the deposition, which was conducted in July, 2000 and stated at that time his intention to seek admission of the transcript at trial so that Rubenstein, who was then 83 years old and a resident of Florida, would not have to travel to Massachusetts to testify. The court denied Starr Finer’s motion and the deposition transcript was later admitted at trial.
Trial in the two cases was held on June 3 and 14, 2002. After taking the cases under advisement, the trial court entered the following findings and orders: in the Trust Case, the court allowed the defendant law firm’s request for dismissal pursuant to Mass. R. Civ. P., Rule 41(d)(2), and found in favor of Starr Finer as against the remaining defendants. The Court awarded damages to Starr Finer in the amount of $500. In the IRS case, the court found for the Rubensteins.
Appeals have been filed in both cases. In the Trust Case, Starr Finer has appealed the underlying amount of the damages awarded by the trial court and the fact that the trial court did not include prejudgment interest in the damage amount. The individual defendants, with the exception of the defendant law firm, have cross-appealed, claiming that the court erred in entering judgment against them individually. In the IRS case, Starr Finer has appealed the finding for the Rubensteins, claiming that the court erred in finding either that there was no contract between the parties or that the statute of limitations bars its claims and that Starr Finer could not otherwise recover under the theory of quantum meruit Starr Finer also appeals the admission of Rubenstein’s deposition testimony in lieu of requiring his live trial testimony. Each of these arguments will be discussed in turn below.
THE TRUST CASE
Amount of Damages
Starr Finer argues that the judge abused his discretion in awarding damages in the amount of $500 in light of the February 27,1993 and January 1,1994 invoices totalling $4,342.50. On appeal, a judge’s determination of factual issues is given great deference and will not be disturbed unless they are clearly erroneous. Yankee Microwave, Inc. v. Petricca Communications Systems, Inc., 53 Mass. App. Ct. 497 (2002). The trial court has broad discretion in awarding damages. Powers v. H.B. Smith Co., Inc., 42 Mass. App. Ct. 657, 665 (1997) (“The field of discretion of the trial judge in these matters is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to an error of law” (citations omitted)). After considering all the evidence, including trial and deposition testimony as well as all documentary evidence, the trial court determined Starr Finer’s damages to be $500. Since the February 23,1993 invoice was issued more than six years before this litigation commenced, the judge could have disregarded this invoice when computing damages.[2] See G.L.c. 260, §2. There was testimony that the January 1, 1994 invoice represented a meeting between Starr and the Trust *127 attorneys that lasted for 2 1/2 - 3 hours and then Starr’s testimony at trial, which lasted for a half hour. There was also testimony that other fact witnesses who testified for the Trust received no compensation for their testimony. In light of these facts, we cannot say that the finding here is clearly erroneous. See, e.g., Wing v. Durkee, 10 Mass. App. Ct. 924 (1980) (“Guided by items in the [plaintiffs] work write-up, testimony as to what was not done or done wrong and by common sense, the trier could come to acceptable approximations of just damages.”)
Preiudgment Interest
Pursuant to G.L.c. 231, §6C, prejudgment interest will be added by the clerk to damage awards in contract actions from the date of the breach or demand, and if such a date cannot be established, then it is awarded from the date the action was commenced. G.L.c. 231, §6C[3]; Striar v. American Medical International, Inc., 45 Mass. App. Ct. 87, 104-105 (1998). Such interest automatically attaches to the damage award, and “need not [be] mentioned by the court.” O’Malley v. O’Malley, 419 Mass. 377, 381 (1995). In the present case, the judge made no specific finding of a date of breach or demand and the clerk calculated prejudgment interest from the date of the commencement of the case, April 15,1999. Starr Finer argues that it is entitled to prejudgment interest calculated from either the dates of its invoices, February 27,1993 or January 1,1994, or from the date of a letter demanding payment that was sent to the defendants on January 25,1995. The date of breach or demand must be proved by the plaintiff and is determined by the trier of fact. Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 125 (1986); Striar, supra. The complaint makes no mention of a date of demand or breach,[4] however, Starr Finer introduced the invoices and a letter as exhibits at trial. Starr Finer argues that the judge erred by not including a date of breach or demand in his findings, despite its written request for such a finding. The defendants counter that the judge “refused” to respond to Starr Filler’s request, thereby showing that Starr Finer failed to meet its burden of proof. Neither argument takes into account Mass. R. Civ. P., Rule 64A(c), which holds that the court is not required to respond to Starr Finer’s requests for rulings since they are the prevailing party. Moreover, Starr Finer was entitled to file a Motion to Alter or Amend the Judgment pursuant to Mass. R. Civ. P., Rule 59(e), or a Motion for Relief From Judgment, Mass. R. Civ. *128 P., Rule 60(a), to correct this perceived error, but chose not to do so. Nevertheless, pursuant to G.L.c. 231, §6C, Starr Finer is clearly entitled to prejudgment interest, and there is no indication that the trial judge intended to deny such interest or otherwise limit it. See O’Malley at 380 (“We are satisfied that the judge did not make any implicit ruling of law denying prejudgment interest. Because [the plaintiff] was entitled to prejudgment interest as a matter of law ... the judgment should have included such an award.”) Since it is established that invoices may be an appropriate method of making demand for payment, we look to the Starr Finer invoices to establish the date of demand.[5] General Dynamics Corp. v. Federal Pacific Electric Co., 20 Mass. App. Ct. 677, 687 (1985) (“a demand for purpose of [G.L.Jc. 231, §6C is satisfied if the party charged is informed ‘of the basis and extent of its obligation, as well as the fact that performance [is] then due.’” (cite omitted.)) In this case, an invoice demanding payment from the defendants was sent on January 1, 1994.[6] Interest on ¡the $500 amount awarded from the judge should be therefore computed from that date.
Individual Liability of file Trustees
The individual trustees of the trust contest the finding of liability against them. Although the Trust is a business trust, its trustees are treated no differently than those of conventional trusts, and they are not relieved of personal liability unless there is an agreement that the creditor will look only to the trust property for payment. Town of Hull v. Tong, 14 Mass. App. Ct. 710, 712 (1982). Here, the law firm arranged on behalf of the trustees for Starr Finer to locate documents and present them at trial. As there was no evidence introduced at trial in this case to show that the parties intended Starr Finer to look only to the trust assets for payment, the individual trustees are responsible to pay for the work that Starr Finer performed. Id.
THE IRS CASE
Statute of Limitations
Starr Finer is seeking to collect upon three invoices that were sent to Ruben-stein and his wife: one dated February 27,1993 in the amount of $1,875, another dated January 1,1994 in the amount of $650 and a third dated July 2,1994 in the amount of $200. Starr Finer argues that there could be orily two grounds upon which the trial judge could conclude that it was not entitled to recovery: the first ground is that the trial judge could have found that there was no contract between Starr Finer and the Rubensteins and the second ground is that the statute of limitations prohibits collection of the invoices. Starr Finer contends that it would be error to adopt either ground. With regard to the first ground, it is highly unlikely that the court found that there was no contract between the parties. The letter countersigned by Rubenstein undeniably shows an agreement existed between the parties and, more importantly, the Rubensteins have not contested the existence of such an agreement.
*129 The second ground posited by Starr Finer, that the statute of limitations bars its claims, is a more plausible reason for the court to have denied relief. The statute of limitations holds that actions for breach of contract must be commenced "within six years after they accrue. G.L.c. 260, §2. As this action was not commenced until April 8,1999, the statute of limitations prevents collection of the February 27,1993 invoice, which represents the bulk of the amount that is claimed to be owed. To end-run this result, Starr Finer argues that the IRS audit work was “one job” performed for the Rubensteins that did not terminate until the July 2,1994 “final” bill.[7] Thus, the three invoices are not each subject to the statute of limitations, but rather, are related to one job that did not finish until June, 1994.
Our review looks to whether the court committed clear error. We give great deference to the facts found by the trial judge “who is usually in a superior position to appraise and weigh the evidence.” Buster v. George W. Moore, Inc., 438 Mass. 635, 642 (2003). The court’s findings must stand “if upon all the facts thus displayed and the reasonable inferences of which they are susceptible, the ultimate finding is justified as matter of law.” Nylander v. Potter, 423 Mass. 158, n.8 (1996) (citing Rahilly v. Addison, 350 Mass. 660, 662 (1966)). The findings of the court will not be disturbed if “such findings are supported ‘on any reasonable view of the evidence, including all rational inferences of which it was susceptible.’” Buster, supra (cites omitted). Rubenstein testified that when Greenside proposed to draft a letter to the IRS explaining the basis of the deductions, Rubenstein told him not to because he wanted his son Alan Rubenstein to be involved in the matter. Greenside testified that Rubenstein knew that he had already started a reply letter to the IRS before he told Greenside to stop. While the exact date of when Rubenstein told Greenside to stop working is in dispute, both agree that the request was made in January, 1993. The trial judge could have reasonably concluded that Starr Finer’s “job” for the Rubensteins concluded in January, 1993, not June, 1994. The January 1994 and June 1994 invoices would therefore reflect work performed after Ruben-stein requested that work stop and are therefore not actionable. This means that the February 27,1993 invoice cannot be revived by piggybacking upon these later invoices and it therefore remains time-barred by the statute of limitations.
As an alternative theory for relief, Starr Finer argues that it is entitled to damages under the doctrine of quantum meruit, which allows recovery of damages on the theory of unjust enrichment when a contract is otherwise unenforceable. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789 (1986). Quantum meruit “is a theory of recovery, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract *130 itself.” Id. (emphasis omitted). Since it is a claim based in contract, the statute of limitations is the same as that for contract. See, e.g., Id. The analysis, therefore, is the same and recovery is not available to Starr Finer under this theory.
The Use of Rubenstein’s Deposition At Trial In Lieu of Live Testimony
The final issue to consider on this appeal is the admission of Rubenstein’s deposition testimony at trial. Mass. R. Civ. P., Rule 43 (a) (3), allows deposition testimony to be used against any party who was present or represented at the taking of the deposition if the court finds that the witness has medical condition or that the witness is out of the Commonwealth, unless it appears that the absence of the witness was procured by the party offering the deposition.[8] The judge could have found that the use of the deposition testimony was based on the fact that Rubenstein resided in Sarasota, Florida and his age and physical condition prevented him from traveling to Massachusetts. Starr Finer argues that Rubenstein could not justify his absence at trial because the trial date was continued from February to June, therefore giving him additional time to arrange to be in Massachusetts. Starr Finer also argues that Rubenstein could not properly show that his medical condition prevented him from traveling at the time of the June, 2002 trial when the only doctor’s letter before the court was dated November, 2001.
The use of depositions at trial is “premised on a prior right to cross-examine the deponent.” Frizzell v. Wes Pine Millwork, Inc., 4 Mass. App. Ct. 710, 712 (1976). In the present case, Rubenstein’s deposition was taken by his own attorney, who stated his intention of seeking to have the transcript used at trial in lieu of Ruben-stein’s live appearance. Starr Finer was represented by counsel at the deposition and although counsel indicated that he did not agree to using the transcript at trial, he was certainly on notice that Rubenstein’s deposition may be used at trial and had a full opportunity for cross-examination. At the time of trial, Rubenstein was 85 years old and in the two years between the deposition and the trial, he had undergone two major surgeries. These are enough facts to allow admission of his deposition testimony under Rule 32. While Starr Finer argues that the trial court was denied an opportunity to view Rubenstein’s demeanor while testifying, there is no mention of any behavior exhibited by Rubenstein at his deposition that would be of note to a trier of fact, nor does Starr Finer point to any palpable prejudice that it suffered by the use of Rubenstein’s deposition at trial.
Starr Finer also argues that Rule 32 prohibits the use of Rubenstein’s deposition because he somehow procured his own absence by moving to Florida. This argu *131 ment is without merit The complaints filed by Starr Finer in both cases state that Rubenstein “is an individual formerly domiciled in Massachusetts and currently residing at 601 Longboat Club, Longboat Key, FL.” Rubenstein testified at his deposition that he had been a resident for Florida for five years — four years before Starr Finer commenced the litigation. Since Rubenstein already lived out-of-state during the entire litigation, he could not have “procured” his own absence to thwart being compelled to testify at trial.
DISPOSITION
In Case No. 199901 CV 261639, the case is Remanded to the clerk for entry of judgment in favor of Starr Finer in an amount that reflects the trial court’s award of $500 plus an award of 12% statutory interest as of January 1, 1994. All other aspects of the judgment zxo Affirmed.
In Case No. 199901CV 261459, the judgment is Affirmed.

 Alan Rubenstein is an attorney with Rackemann, Sawyer and Brewster, P.C., and represented the Trust in the Trust Case.

 Starr Finer argues that it would be inconsistent with the trial courts findings to conclude that the statute of limitations bars collection of the February 27,1993 invoice since Sherman Starr testified that he had conversations about receiving payment with Rubenstein in late 1993 and with Alan Rubenstein after the January 1,1994 invoice was sent. The trial court was free to credit the conflicting testimony of Attorney Pinto who represented the Trust with Alan Rubenstein and who testified that in December, 1993, Sherman Starr asked only if he would be compensated for testifying at trial, which service was reflected in the January 1,1994 invoice that is not barred by the statute of limitations. It is not clearly established that either Rubenstein or Alan Rubenstein made a separate agreement, within the statute of limitations, to pay the February 27, 1993 invoice. Compare Jenny v. Airtek Corp., 402 Mass. 152 (1988).

 This statute states:
In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action, provided, however, that in all actions based on contractual obligations, upon a verdict, finding or order for judgment against the commonwealth for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at a rate calculated pursuant to the provisions of section six I from the date of the breach or demand. If the date of the breach or demand is not established, such interest shall be added by the clerk of the court from the date of the commencement of the action.

 Paragraph 14 of the complaint states, “The Defendants owe Starr, Finer $4342.50, exclusive of interest and costs of collection, according to the Accounts annexed hereto as Exhibits A.” There are no Exhibits attached to the complaint contained in the Appendix submitted to the court by plaintiff and we are uncertain if such exhibits were attached to the original complaint.

 The individual defendants also argue that the invoices do not establish a “demand” on them because the invoices were addressed to the defendant attorneys on behalf of the trust and not the individual trustees. Case law holds that notice sent to the defendants’ attorneys constitutes notice to the defendants. See Massachusetts Parole Bd. v. Civil Service Com’n, 47 Mass. App. Ct. 760 (1999) (“ordinarily, a person is held accountable for the conclusions of his attorney to the extent that one accedes to those conclusions or permits counsel to act in one’s stead.”) Since the Trust clearly acquiesced to its attorneys arranging for Starr Finer to testify at trial, it cannot now attempt to evade liability by pointing to whom the invoice is addressed.

 For reasons previously discussed, the interest calculation cannot begin with the February 27, 1993 invoice because it is barred by the statute of limitations. G.L.c. 260, §2.

 Starr Finer claims that the trial court erred in responding to one of their Requests for Rulings concerning this issue, which stated the following:
The evidence warrants a finding that Plaintiffs and Defendants entered into a contract, the terms of which were that Starr Finer would provide professional services to the Defendants, that Starr Finer would send intermittent invoices for such services to the Defendants, and that the Defendants would pay for the services provided.
The court responded that this request was “Allowed, but the Court does not so find.” The plaintiffs assert that in allowing this request the court held that a contract was not formed between the parties, in contravention of admissions by parties that a contractual relationship existed. The existence of a contract is only one element of the request. The terms of the contract, on which hangs the issue of whether the plaintiffs’ claims are time-barred, are another element to the request. The trial court clearly did not agree with the plaintiffs’ characterization of the contract terms, and since the evidence supported another view of the contract terms, the court’s response to the plaintiffs’ request is not error.

 The relevant portion of Mass. R. Civ. P., Rule 32, states as follows:
(a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:
The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is out of the Commonwealth, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.