Sikora, Mitchell J., J.
RULINGS
Upon consideration of the administrative record, the pleadings, the parties’ memoranda of law, and oral arguments, the court hereby ALLOWS the motion of the plaintiff Boston Police Department for judgment on the pleadings; and DENIES the motion of the defendants Michael Tolland and the Massachusetts Civil Service Commission for judgment on the pleadings.
MEMORANDUM OF DECISION Factual Background
1.On February 11, 2000, Sergeant Michael Tolland received service in hand of an order from the Boston Police Commissioner to appear on April 10, 2000 before the Police Department’s Chief Administrative Hearing Officer, Superintendent Florastine Creed, for a disciplinary hearing. The hearing constituted a procedure within Internal Affairs Division Case No. 086-99. That case contained charges against Sergeant Tolland for failure to supervise booking officers responsible for the safety of a prisoner who committed suicide by hanging himself in his cell at District Station A-l on May 6, 1998. (Administrative Record, hereafter “A.R.” 10-11; 22.) The order or directive (dated February 8, 2000) contained the following language (A.R. 10):
You shall appear at the hearing in the uniform of the day as required by the Rules and Procedures of the Boston Police Department. In addition, postponements to another date may be allowed by Superintendent Creed based upon an adequate reason. All such requests must be received in writing, at least (7) business days prior to the date on which the hearing is scheduled.
2. The order or directive, in its opening paragraph, stated that the undersigned Acting Police Commissioner was “contemplating disciplinary action against [Tolland], including discharge or suspension, arising out of IAD Case No. 086-99.” In addition, a sentence in the second paragraph of the four-paragraph directive or order communicated the following. “A full hearing on this matter will be conducted by the Chief Administrative Hearing Officer, Superintendent Florastine Creed, on Monday April 10, 2000, at 10:00 a.m. in the Third Floor Hearing room at Boston Police Headquarters.” The date and time appeared in bold face. (A.R. 10.)
3. In this disciplinary proceeding, Sergeant Tolland received representation from union counsel Alan McDonald and union president Captain William Broderick. (A.R. 59, Finding of the Civil Service Commission.)
4. Through its attorney, the Department had made a settlement proposal. (A.R. 21-23; 97-98.)
5. Settlement discussions continued into early April. At all times during the settlement negotiations Department counsel dealt with Captain Broderick exclusively, and never with Sergeant Tolland. (A.R. 59, Commission Findings 4 and 5.) On April 6, 2000, Department counsel discussed with Captain Broderick the latest settlement offer. She informed Broderick that that offer would be the Department’s final one; and that the Department needed agreement to it on or before the close of Friday, April 7, 2000. (A.R. 59, Commission Finding 6.)
6. Attorney McDonald was committed to participate in a labor dispute proceeding in Washington, D.C., on April 10, 2000. He requested the consent of Department counsel to a continuance of the hearing scheduled for April 10. Department counsel did not consent but forwarded the request for the continuance to Superintendent Creed’s office. Superintendent Creed was away on vacation and not scheduled to return *375 until April 10, 2000. No continuance therefore ever issued. (A.R. 59-60, Commission Findings 7-8.)
7. Still on April 7, 2000, at about 4:00 p.m., Department counsel spoke to Captain Broderick, informed him of Superintendent Greed’s unavailability, and informed him of the Department’s intention to present its case on Monday morning, April 10. (id., Commission Finding 9.)
8. Still on April 7, 2000, Sergeant Tolland spoke with Captain Broderick about the approaching hearing. Broderick informed Tolland about the latest settlement offer. Broderick told Tolland of his opinion that they “could do better.” Finally he told Tolland that Tolland did not have to appear for the April 10 hearing. (Id., Commission Finding 10.)
9. Tolland did not appear for the hearing on April 10.Nor did he have duty on that day. (Id. at 60, Commission Finding 12.)
10. At the hearing of April 10, alternate counsel for the Department appeared, acknowledged the request by attorney McDonald for a continuance by reason of scheduling conflict, and reported the Department’s opposition to the continuance. (Id. at 60, Commission Finding 13.)
11. Superintendent Creed on April 10 did grant the continuance to a later date. (Id. at 60, Commission Finding 14.)
12. On April 20, 2000, the Police Commissioner notified Tolland of the imposition of a three-day suspension for failure to comply with the order dated February 8 and delivered on February 11, directing his appearance at the hearing of April 10. The notice characterized the absence of April 10 as the breach of an order and as the violation of Department Rule 102, §8, commanding compliance with all Department and superior officer orders and directives. (A.R. 06.)
Procedural History
1. In accordance with G.L.c. 31, §41, Tolland requested and received a hearing on the charge against him. The Department conducted a hearing on June 1, 2000. By letter dated August 16, 2000, the Commissioner notified him of the denial of the appeal of the three-day suspension.
2. In accordance with G.L.c. 31, §41, fifth paragraph, Tolland appealed from the Department’s denial to the Civil Service Commission.
3. After an evidentiary hearing held on March 21, 2002, in accordance with G.L.c. 31, §43, second paragraph, the Civil Service Commission on May 7, 2003, issued a decision reversing the imposition of the three-day suspension. (A.R. 58-63.)
4. In accordance with G.L.c. 31, §44, fourth paragraph, the Department has appealed to the Superior Court. The Department contends that the decision of the Commission constitutes an error of law within the meaning of G.L.c. 30A, §14(7)(c). (Department Memorandum of Law at 6, first full paragraph.)
Analysis
1. In order to support the three-day suspension, the Department must prove, by a reasonable preponderance of the evidence, just cause for its action. Gloucester v. Civil Service Commission, 408 Mass. 292, 297 (1990). G.L.c. 31, §41, second paragraph. “Just cause” will mean “substantial misconduct which adversely affects the public interest by impairing the efficiency of public service.” Murray v. Second District Court of Eastern Middlesex, 389 Mass. 508, 514 (1983).
2. Under G.L.c. 31, §44, and the assimilated standards of G.L.c. 30A, §14(7), the Superior Court (a) must typically accept the findings of fact of the Civil Service Commission hearing officer if supported by substantial evidence; and (b) will, upon the facts so supported, determine whether the action of the Commission was “legally tenable.” City of Leominster v. Stratton, 58 Mass.App.Ct. 726, 728 (2003) (dismissal of police officer) (cases collected); School Committee of Brockton v. Civil Service Commission, 43 Mass.App.Ct. 486, 490 (1997).
3. In this instance, no issues of fact have materialized. I have adopted the undisputed subsidiary facts found by the Commission. Rather the Commission’s reversal of the three-day suspension rests entirely upon legal reasoning. The Commission has reasoned that no evidence shows intentional disobedience by Sergeant Tolland of the order to appear at the April 10, 2000 hearing; that, while he did receive the order of notice of the hearing, he subsequently relied in good faith and entirely upon the advice of Captain Broderick not to appear on April 10; and that his reliance and belief were reasonable. (A.R. 62.)
4. The Commission’s reasoning turns out to be incorrect. Its decision of May 1, 2003 failed to address the most closely fitting precedent in point, Massachusetts Parole Board v. Civil Service Commission, 47 Mass.App.Ct. 760, 765-66 (1999). The Commission’s decision here violates the rule of that case. In the vocabulary of civil service litigation, the Commission’s decision is “legally untenable.” It constitutes an error of law within the meaning of G.L.c. 30A, §14(7)(c).
5. (a) In Parole Board, the employee did not appear, as summoned, at an investigatoiy hearing of the employer board. As a consequence, the Parole Board imposed the ultimate sanction of discharge. The Civil Service Commission reversed the discharge upon the ground that the employee had acted in good faith reliance upon the advice of his attorney. Parole Board, 47 Mass.App.Ct. at 762. (The Commission combined with that ground the independent reason that the Parole Board had not adequately informed the employee of the consequences of a failure to appear.) Id. at 763.
*376 (b)The Appeals Court rejected the argument that “good faith reliance upon the erroneous advice of one’s attorney should excuse noncompliance with an order of a superior” upon several grounds. First, it reasoned that such an excusal appeared to contradict the legal principle that ordinarily a person will bear the consequences of his attorney’s advice, however mistaken. Second, it reasoned the such a rule of excusal “would seriously jeopardize efficient internal surveillance and quality control by government agencies.” Third, the court added that such a rule would “place an employee who hires a lawyer at a distinct advantage over one who does not.” Parole Board, 47 Mass.App.Ct. at 766. Significantly, although Parole Board had been on the books for more than three and a half years at the time of the Commission’s decision in this matter, the Commission did not mention it. (A.R. 58-63.)
6. As a matter of authority and logic, Parole Board controls the present case. If an employee relying in good faith upon the advice of an attorney can suffer the consequence of discharge, then a fortiori an employee relying in good faith upon the advice of his union representative can suffer the consequence of a three-day suspension.
7. Although the rule of Parole Board may impose a standard of strict liability upon employees (like Tol-land) innocently relying upon bad advice to absent themselves from scheduled hearing events, important rational considerations support a policy of strict liability.
(a) The Appeals Court pointed out that excusal “would seriously jeopardize efficient internal surveillance and quality control by government agencies.” Id. at 766. That somewhat abstract language would include the need to maintain respect for formal disciplinary proceedings. Discipline is a subject of extraordinary concern in employment in general, and in the paramilitary culture and employment of a police force in particular. It cannot tolerate a custom of casual absenteeism from significant hearings and still maintain a character of credibility. Persons involved in disciplinary proceedings can rationally be required to know that they miss them at their own risk.
(b) Massachusetts decisions have acknowledged the special importance of police disciplinary decisions for purposes of morale and order. Police rules of conduct and their enforcement are policy matters which, in the absence of political interference or deviation from merit standards, “are beyond the [Civil Service] Commission’s reach.” Police Department of Boston v. Collirts, 48 Mass.App.Ct. 408, 413 (2000).
(c) Apart from the special nature of police discipline, unilateral absenteeism aborts the scheduled event and wastes the preparation of opposing parties and the tribunal, and the opportunity of alternate matters to proceed during the lost time in the tribunal.
(d) In addition, the unilateral no-show could devolve into a tactic of dilatory angling for better negotiating positions or results. The circumstances of the present case suggest that danger. Although no finding has emerged that Sergeant Tolland failed to appear for an ulterior negotiating purpose, the subsidiary findings do show that Captain Broderick thought that Tolland “could do better” than the final pre-hearing offer from the Department. (A.R. 60 Commission Finding 10.) Genetically, if not specifically in this case, delay by absenteeism can degenerate into a negotiating ploy. The Department is entitled to entertain that rational concern as a basis for strict sanctions as a deterrent.
(e)The policy of strict liability for unauthorized absenteeism did not in this case, and need not generally, operate as a draconian regime. Here the suspension of three days appears rationally calibrated, and not severely punitive. In this case the policy of strict liability has served major purposes but inflicted a minor penalty.
8.Finally, I have weighed the arguments by counsel for Sergeant Tolland (a) that the directive violated here was a “non-operational” rather than an “operational” order; and (b) that the practical purpose of the April 10, 2000, hearing was to protect Tolland’s rights rather than the Department’s interests or objectives. Counsel reasoned that these distinctions mitigate any unauthorized absence and any harm to the Department’s disciplinary authority. Counsel maintain that those distinctions separate this case from the Parole Board rule. (Memorandum of Law at 11-15.) I do not find any room for such distinctions in the Parole Board reasoning of the Appeals Court. Further, as a practical matter, the special importance of discipline within a police force appears to me to preclude any rational distinction between operational orders and non-operational orders. As to the nature of the April 10 hearing as an event primarily beneficial to the respondent officer, the Department itself is entitled to discharge its duties even for the benefit of a respondent officer with reasonable efficiency and reliabiliiy. If Sergeant Tolland had a right to the hearing, then the Department had a correlative duly to conduct it. His absence prevented the performance of that duty and thereby harmed an interest of the Department.
Conclusion
For these reasons, the court reverses the decision of the Civil Service Commission and orders the reinstatement of the action of the Boston Police Department suspending Sergeant Michael Tolland for a period of three days.

The court commends counsel for the Department an-d for Sergeant Tolland for the high quality of their written and oral argument.